## H. A. BOND v. JACOB WOOL.

*Riparian Rights—Navigable Streams—Water Front—Entry and Grant—Wharves—Evidence—Demurrer—Trespass—Injunction.*

1. By demurring, the defendant admits the truth of the testimony in the aspect most favorable to the plaintiff.

2. In the absence of specific legislation, riparian owners have a qualified property in their water fronts.

3. Their right to construct wharves on such water fronts is subject to legislative control and the regulation of an adjoining incorporated town.

4. All vacant and unappropriated lands belonging to the State are subject to entry, except lands covered by navigable streams.

5. Persons owning lands on navigable streams may erect wharves next to their lands up to deep water, and may make entry and obtain title as in other cases, subject to the regulation that they must not obstruct navigation, and that they shall be confined to the straight lines from their water fronts.

6. By making entry under the laws of the State, such riparian owners of lands on navigable waters may acquire an absolute, instead of qualified, property in the land covered by water up to deep water.

7. So, where the plaintiff, owner of a tract of land on navigable water, and those under whom he claims, have occupied the shallow waters immediately fronting his land since 1802, by building fish-houses therein, no entry having been made under the statute: *Held*, (1) that he had only a qualified property therein; (2) that a defendant who, in order to gain access to deep water, erected on his own natural water front a pier which stood between the plaintiff's fish-houses and deep water on one side, was not a trespasser. The plaintiff was only entitled to access to deep water in his immediate water front.

8. Where it appeared that the defendant, who was preparing to erect a fish-house and landing, which, when erected, would obstruct plaintiff's egress to deep water on one side, though not immediately in front, threatened to tear down plaintiff's wharf erected on plaintiff's own water front: *Held*, that defendant was not subject to injunction, it appearing that he was solvent and that the trespass was not continuous in its nature.

This was a CIVIL ACTION, heard before *Whitaker, J.*, at the Spring Term, 1890, of the Superior Court of CHOWAN County.

The contention of the parties will be better understood with the aid of the following map referred to in the testimony. [See diagram.]

The plaintiff, complaining of the defendant, says—

1. That on the 3d of November, 1887, he was the owner and in the quiet and rightful possession of certain buildings and structures in Edenton, at the foot of Water street, which were used by him in landing fish caught in Albemarle Sound and packing the same for market, and which he had constructed at large expense.

2. That these houses and structures are reached by boats from Albemarle Sound and Edenton Bay, and if this means of approach be cut off they will be rendered entirely valueless.

3. That on the day named, the defendant threatened wrongfully to tear down and destroy said buildings and structures, and unless restrained by this Court will do so, wrongfully and unlawfully.

4. That the defendant also threatened at the same time, and has procured timber for the purpose of carrying out his said threat, to construct a wharf in Edenton Bay, running out from certain lots owned by him in Edenton, in such a manner as to obstruct and cut off all approaches by water to the plaintiff's said property, and so as to obstruct and impair the navigation of said bay and Albemarle Sound.

5. That Edenton Bay and Albemarle Sound are navigable waters.

6. That Edenton is an incorporated town.

7. That the defendant is not a citizen of the United States, and has obtained and can obtain no grant for the land covered by the water in which he proposes to construct his said wharf.

8. That the said action of said Wool is wrongful and unlawful.

Wherefore, plaintiff demands judgment that the defendant be restrained and enjoined perpetually from destroying, interfering with and injuring the plaintiff's said houses and structures, and from obstructing the approaches to the same, and from building the wharf aforesaid, and for other relief to which this complaint may entitle him.

ANSWER.

The answer of the defendant to the complaint of the plaintiff in this action—

1. The defendant denies the allegation in the first section of the complaint, so far as admitting title in the buildings and houses named, or to the land on which they stand, in the plaintiff, and he denies the same. He admits that the plaintiff is in possession of, and uses, a house, situated as described in the complaint, and for the purpose of receiving, shipping and packing fish.

2. Defendant has not sufficient information in regard to the facts alleged in second clause of complaint to form a belief, and he denies the same.

3. He denies that he ever threatened to destroy or tear down the buildings erected by the plaintiff, as charged in the third clause of the complaint.

Defendant alleges that plaintiff is in possession of a lot in the town of Edenton, at the intersection of Blount and Granville streets, and which runs with Granville street, and is bounded by the same to the waters of Edenton Bay.

The defendant owns a lot adjoining, running from Blount street to the waters of Edenton Bay; and he alleges that the dividing line between him and the plaintiff continued into the water will embrace and enclose all the buildings and structures erected by the plaintiff. The defendant was preparing to erect a wharf within his own lines upon the waters of the bay, as he had a right to do, and to this end he drove

a line of piles within his own lines, near the line of the plaintiff, but not encroaching upon the line continued in the water, or touching or interfering with the buildings of the plaintiff.

The plaintiff tore down a portion of the defendant's piles, and claims the right to all the defendant's water front.

The plaintiff has a clear, unobstructed water front to the deep water of the bay by continuing his lines in a straight direction parallel with Granville street.

The defendant also has access to deep water by continuing his lines in the same direction    The plaintiff is not content with reaching deep water himself, but he claims also the right to run his lines across the lines of the defendant and bar his access to the water.   Such claim is unequitable and unlawful, and is the foundation of the present action.

4. The defendant denies that he ever threatened or attempted to interfere with plaintiff's buildings.   He did procure timber to build a wharf upon his water front within his own lines extended to deep water, as he has a right to do, and he avers that he has the right lawfully to do this. But the wharf, as he intended to build it, would not interfere with any of plaintiff's buildings, and cannot interfere with or injure them; nor has he made any preparation with any material or other means to do the acts he is charged with in this section or any other section of the complaint. He further denies that the erection of a wharf upon his water front at deep water will at all interfere with or obstruct the access of the plaintiff to the deep water of the bay or sound.   Plaintiff has an unobstructed way to such deep water, which would not be touched at all, nor in the least obstructed by the erection of his wharf.   He denies also, as charged, that the erection of his wharf at deep water will obstruct or at all interfere with the free navigation of the bay or sound; and he denies that he has yet erected any wharf.

5. He admits the fifth clause of the complaint, and also the sixth clause.

7. He denies the seventh allegation of the complaint.

8. He denies the eighth clause of the complaint, and alleges that the plaintiff has no equity, and has alleged none in his complaint; and he prays to be hence discharged with his costs, and that the injunction be dissolved.

3 That the buildings mentioned in the complaint are in and upon the navigable and public waters mentioned in item 5 of the complaint, and are a public nuisance.

4. That the said buildings are constructed of the most inferior kind of material, and are not worth more than two hundred dollars.

5. That the defendant is entirely solvent and answerable in any amount of damages which the plaintiff my recover of him

Wherefore, he prays that he recover his cost of the plaintiff, and go without day.

A jury was duly impaneled, and the following evidence introduced:

H. A. Bond, Jr., the plaintiff, testified: "I am engaged in the fishing business; my fish-houses are at the intersection of Granville and Water streets; have been there ever since 1878; fish-houses are located on an old sunken wharf, outline of wharf on the south and west sides; at the time I built, my father had possession of the water-lot fronting these fish-houses; defendant threatened to tear down part of my wharf; we had him enjoined; he wanted to build a fish-house immediately upon front of landing-place; this, if done, would destroy my water privileges; the draft of my boats, loaded, about two feet; unloaded, eight or ten inches; houses on Granville street run out into the water fronting Granville street; water all around houses at ordinary tide about eight inches; this part of the bay where fish-houses are is known as Matchemacomac Creek; in fact, this and

Edenton Bay are one body of water; all this water up to where these houses are is navigable by small boats; main channel is about sixty or seventy feet south and twenty-five feet west; boats approach fish-houses from the bay; I built fish-houses, and at that time water about same as it is now—eight inches shallowest part, two feet at deepest; boats of five tons could go to fish-house.

"The dotted line (showing the western limit of plaintiff's claim, lines running nearly north and south), the short black line and the long black line running from Blount street south to the water. The dotted line is the one I contend to be the proper line between me and the defendant. The short black line is where defendant has his fence. The long black line is the one defendant claims as the line between me and him. Defendant started to run his pilings 60 or 70 feet from shore, about on dotted line and towards my fish-houses. If pilings had been run that way along dotted line, when they got in front of fish-houses there would be about one foot between pilings and wharf.

"I heard defendant say if I didn't remove my wharf he would; he had personally ordered me to to do it; no lot between fish-houses and street; at time I built fish-house from eight inches to two feet on old wharf; I never knew anybody to be in possession of it; the fish-house runs west from Granville street into water."

*Re-direct Examination:* "What appears in map as the west line of Granville street is not the true line; the true line is west of that; my fish-house is on Matchemacomac Creek. India wharf and John's Island constitute the two points of the mouth of that creek. The creek flows into the bay. The navigable water is in front of defendant's lot and on the western side. The difference between depths of water on *western* side of defendant's lot extended and the water immediately in front of my wharf is, that on *western* side it is deep enough for any boat navigating these waters, while

immediately in front of my wharf it is not more than two feet; deep water continues from defendant's lot extended half-way across towards my fish-house; smallest boats could get to my fish-house; ordinary boats could not; the dotted line is the true line between my father's lot and the defendant's lot; my fish-houses don't obstruct this line; in building on defendant's lot, deep water would be reached in less than half the distance on the western side than on the eastern side; not possible for boats to run on northern side; it is not possible for boats to run on north side of my fish-house; there is water there, but it is too shallow; if improvements be not kept up, water encroaches upon land; west line of Granville street ought to be further west."

H. A. Bond, Sr., for plaintiff, testified: "I remember when the old wharf was in use all the way from the fish-house to my fence; that wharf has sunk down. Lot No. 187, extended from Blount street south to the extension of Water street, and includes and covers the old wharf; Ice-house Company had possession of this lot."

*Cross-examination:* "From southern boundary of my lot the space has been under water ever since I have known it; old wharf has been down thirty or forty years; from fish-house to dry land fifty feet."

H. A. Bond, Jr., plaintiff, recalled, testified: "I have known lot No. 187 since I was a small boy; am forty-five years old; buildings on it when I first knew it; ice-house on it when I first knew it, and since then."

*Cross-examined:* " Ice-house at corner of Blount and Granville streets, northeast corner of lot No. 187; N. S. Railroad depot situated in Matchemacomac Creek; large steamers, 150 tons and five or six feet draft, come to this depot; depot further up Creek than my fish-house; from western side of fish-house going south, it is 150 feet to deep water; on southern side of fish-house water fifteen inches deep; on western

107—10

side ten inches; from south side to channel water gradually gets deeper; from dry land to fish-houses covered by water ever since I can recollect; going north from a line east and west to depot from fish-house, water six feet deep; have seen 100-ton vessels launched from lot known as "Ship-yard," which is west and immediately adjoining defendant's lot."

*Re-direct:* "Ship-yard lot 66 feet from my fish-lot; my fish-house over the water; 165 feet from fish-house to high-water mark."

Plaintiff also introduced the following evidence:

1. Deed from W. D. Pruden, administrator of A. H. Bond, to Henry A. Bond, Sr., conveying lot No. 187, described as follows: "The following real estate in Edenton, North Carolina, lot No. 187, in said town, known as the 'Ice-house lot,' containing one-fourth acre, more or less, bounded north by Blount street, east by Granville street, south by Edenton Bay, and west by Jacob Wool-Jones' lot." And the summons against the heirs at law of A. H. Bond, petition and orders in the cause to make real estate assets, under which the sale of the said lot and deed were made.

2. Will of Mrs. Penelope Bond, conveying the said lot to A. H. Bond, describing it as follows: "All my right, title and interest in a certain water-lot, or lot of land with the water front and partially covered by water, situated in the town of Edenton, on Granville street, and commonly called the Baptizing Wharf, known and distinguished in new plan of said town as lot No. 187, with all the appurtenances thereto belonging." Will probated and recorded May Term, 1866.

3. Will of Samuel Dickinson, conveying lot No. 187 to Penelope Bond. Probated December, 1802.

4. Summons in this cause, dated November 3d, 1887.

5. Affidavit of Jacob Wool, defendant, dated June 16th, 1888, to become a citizen of the United States, in which he swears he was at that time a subject of Germany.

6. Section 1 of plaintiff's complaint, and section 1' of defendant's answer, are as follows:

(1). Section 1 of complaint: "That on the 3d of November, 1887, he was in the quiet and rightful possession of certain buildings and structures in Edenton, at the foot of Water street, which were used by him in landing fish caught in Albemarle Sound and packing the same for market, and' which he had constructed at a large expense."

(2). Section 1 of original answer: "The defendant denies the allegation in the first section of the complaint, so far as admitting title in the buildings and houses named, or to the land on which they stand, in the plaintiff, and he denies the same. He admits that the plaintiff is in possession of and uses a house situated as described in the complaint, and for the purposes of receiving, shipping and packing fish."

The defendant demurred to the evidence. The Court sustained the demurrer, and gave the judgment set out in the record.

The plaintiff excepted, first, to the judgment sustaining the demurrer to the evidence, and, second, to the judgment rendered.

Plaintiff appealed.

*Messrs. W. M. Bond* and *Pruden & Vann* (by briefs), for plaintiff.

*Messrs. J. W. Albertson, Jr*, and *C. M. Busbee*, for defendant.

AVERY, J.—after stating the facts: By demurring the defendant admits the truth of the testimony in the aspect most favorable to the plaintiff. *Nelson* v. *Whitfield,* 82 N. C., 46. He, therefore, concedes that the plaintiff and those under whom he claims have had open, notorious adverse possession of lot No. 187 (which is bounded by Blount and Granville streets on the north and east, by defendant Jacob Wool's lot on the west, and by Machemacomac creek, an arm

of Edenton Bay, on the south) for more than fifty years under a connected chain of title, beginning with the will of Penelope Bond in the year 1802. It is further admitted that the dotted line running about one foot west of the plaintiff's fish-house is the western boundary line of lot No. 187, extended southward across or into Machemacomac creek, and that the piles driven by the defendant into the water to form a support for his proposed building, were not, and an extension of them would not have been, at any point, east of said dotted line. Does the testimony, not denied, show that the defendant Wool was a trespasser when the action began? We think not.

In the absence of any specific legislation on the subject, a littoral proprietor and a riparian owner, as is universally conceded, have a qualified property in the water frontage belonging, by nature, to their land, the chief advantage growing out of the appurtenant estate in the submerged land being the right of access over an extension of their water fronts to navigable water, and the right to construct wharfs, piers, or landings, subject to such general rules and regulations as the Legislature, in the exercise of its powers, may prescribe for the protection of public rights in rivers or navigable waters. Gould on Waters, § 149; 6 Lawson's Rights and Rem., § 2931; *Yates* v. *Milwaukee*, 10 Wall., 497; *Dutton* v. *Strong*, 1 Black, 31; *Stillman* v. *White*, &c., 3 Woodbury & Minot, 538 to 551; *Vondolson* v. *Mayor New York*, 17 Fed. Rep., 817; 28 Myers Fed. Dec.—Riparian and Littoral Proprietors—689 to 761, especially pages 691 and 706; Houck on Rivers, §§ 280–281; *State* v. *Narrows Island Club*, 100 N. C., 477; *Broadnax* v. *Baker*, 94 N. C., 681; *Railroad* v. *Schumer*, 7 Wall., 272; *Jackson* v. *Keeling*, 1 Jones, 299.

Leaving our legislation out of view, the plaintiff, or H. A. Bond, Sr., under whom he claims, is, at least in the discussion of this appeal, to be considered as holding, as an incident to the ownership of lot No. 187, the right to build fish-

houses over the water at any point east of the dotted line
and southward and in front of said lot between the land and
navigable water, and this privilege the plaintiff has exercised
and enjoyed since the year 1878, as had his father for near
twenty years before.  But the defendant Wool has, if his
interest is not affected by our statute, a property of the very
same nature in all of the water bounded by his front on the
north, the dotted line on the east, navigable water on the south,
and an extension of his western boundary line southward to
navigable water on the west.   He, too, has the right to con-
struct piers, wharves, landings and fish-houses within the
limits mentioned.   According to the testimony, he had
driven piles into the earth under the shallow water in a line
just up to and west of the dotted line, but had not extended his
foundation as far south as the plaintiff's fish-houses.  Clearly,
then, if the western boundary line of lot No. 187 be located
where plaintiff claims that it runs, the defendant had not
trespassed on the water front of that lot by crossing over to
the east of it, but had, as far as his plans were developed, by
his acts, shown a purpose to avoid the consequences of occu-
pying the territory east of his own frontage, or east of the
dotted line, which meant the same.   This qualified property,
that, according to well-settled principles, as interpreted in
nearly all of the highest Courts of the United States, is
necessarily incident to riparian ownership, extends to the
submerged land bounded by the water front of a particular
proprietor, the navigable water and two parallel lines ex-
tended from each side of his front to navigable water.

At common law, land covered by water was the subject of
grant, except where the tide ebbed and flowed; but, with the
exception of a short interval, land covered by navigable
water beyond the influence of tides was not subject to entry
and grant under the statutes in force in North Carolina from
1777 to 1854.   *Hatfield* v. *Grimstead,* 7 Ired., 139; Acts 1777,
ch. 114; 1 Potter's Revisal, p. 278; Rev. Stat., ch. 42, § 1.

The Acts of 1854–'5 (*The Code*, § 2751) provide that "All vacant and unappropriated land belonging to the State shall be subject to entry, except lands covered by navigable streams: *Provided*, that persons owning lands on any navigable sound, river, creek, or arm of the sea, for the purpose of erecting wharves on the side of the deep waters thereof, next to their lands, may make entries of the land covered by water adjacent to their own, as far as the deep water of such sound, river, creek, or arm of the sea, and obtain title as in other cases. But persons making such entries shall be confined to straight lines, including only the fronts of their own tracts, and shall in no respect obstruct or impair navigation. And when any such entry shall be made in front of the lands of any incorporated town, the town corporation shall regulate the line on deep water to which entries shall be made; and for all lands thus entered there shall be paid into the Treasury the sum of one dollar per acre. Also when any person shall have erected a wharf on public lands of the description aforesaid, before the passage of this section, such person shall have the liberty to enter said land, including his wharf, under the restrictions and upon the terms above set forth."

It seems that the Act of 1777, ch. 114, § 10, restricted the right of entry on navigable waters to the water-mark, but did not, by any prohibitory provision, prevent the riparian grantee from acquiring, with the absolute property, to the margin of the water, the qualified property, which gave him access to the *navigable* water and the right to erect piers and wharfs so that he might utilize the water for the transportation of persons and the products of the land. The Act of 1854–'55 (*The Code*, § 2751, par. 1) made an exception in favor of riparian owners of land on any "navigable sound, river, creek, or arm of the sea," by giving to them the exclusive privilege of acquiring the absolute fee in the precise territory on their fronts, in which they already held, as

incident to the original grant, the qualified property, or appurtenant right, which we have defined. It does not seem that the General Assembly intended, if it had the power to do so, to wrest from riparian proprietors any rights that they already held, but to allow them, at a fair price, to acquire an absolute, instead of a qualified, property. It is apparent that where one holds lands abutting upon navigable waters, of the kind mentioned in the act, it would be the part of wisdom, if the right of access to, and use of, the water is at all valuable, to close with the State and take the proffered title in fee. One of the advantages, of which we can conceive, arises out of the provisions of the very next subsection to that we are discussing. So that, in no view of the case, has the plaintiff or his father acquired more than a qualified property in the land covered by water, or any right or interest whatever west of the red line, while the defendant has driven no piles east of that line. The defendant has not, therefore, committed any trespass on the plaintiff's front. If the defendant, in order to gain access to the deep water on his own natural front, had located a fish-house immediately west of that occupied by the plaintiff, he would not, in any view of the case, have incurred liability to an action on the part of the plaintiff. The plaintiff offered no grant. He had a right to take out a patent only for the land extending out to the deep water between the dotted line and a prolongation of his eastern boundary line southward towards the bay. If his fish-house opened on deep water only on the west, he could remove it far enough south to gain access to navigable water by the southern door, and he or his father has the privilege of acquiring title to the land on his natural front to that point. There is no general allegation in the complaint that the defendant had trespassed upon the plaintiff's land (lot No. 187), but a specific charge that he has trespassed by driving piles into the lands covered by water along a certain line. If, therefore, there is evidence to show a trespass north

of the shore by crossing over the dotted line, there is no allegation in the complaint that would correspond with the proof, even under the liberal rule laid down in *Harris* v. *Sneeden*, 104, N. C., 369.

The only remaining question is, whether the testimony establishes the right of the plaintiff to demand a perpetual injunction in order to restrain the defendant from injuring or destroying the fish-house or any part of it. Notwithstanding the denials in the answer, the defendant, by demurring to the evidence, admits that he threatened to tear down a part of plaintiff's wharf, and proposed to build a fish-house and landing immediately to the westward of that occupied by plaintiff, and that he said in the plaintiff's presence, after ordering the latter to remove his said wharf, that if the order should not be obeyed he would remove it himself.

As we have already stated in substance, the testimony not only fails to establish *prima facie* a continuous trespass on the part of the defendant upon any portion of the premises claimed by the plaintiff, but it does not show even that his lot or water front has at any time been actually invaded by the defendant. His demand for extraordinary relief rests, therefore, solely upon the idea that he may rightfully invoke the aid of equity to prevent the threatened injury to the fish-house or wharf. The general rule is, that where one is shown to be engaged in committing acts that would amount to waste, if his occupation or entry upon the land is wrongful, equity will not interpose by injunction unless—

1. The plaintiff also sets up an apparently good title and the owner fails to deny at all, or to sufficiently controvert, such claim of title.

2. Unless it appears by the allegation of specific facts that the acts complained of will probably be productive of irreparable injury to the plaintiff.

As a general rule, too, such relief will not be granted to put a stop to or prevent the commission of waste, unless it appears, likewise, that the party who is doing the injury is insolvent, but an exception to this general principle grows out of the provision of ch. 401, Laws 1885, that it shall not be necessary to allege the insolvency of a defendant where the trespass is continuous in its nature, or consists in the cutting and removing of timber-trees.    The facts admitted fail to bring this case within the exception.    *Rollins* v. *Henry*, 77 N. C., 467; *Dunkart* v. *Rinehart*, 87 N. C., 224; *Lumber Company* v. *Wallace*, 93 N. C., 22; *Ousby* v. *Neal*, 99 N. C., 146; *Lewis* v. *Lumber Company*, *ibid.*, 11; *Frink* v. *Stewart*, 94 N. C., 484.    The mere threat made by the defendant, who is perfectly solvent, to tear down a part of a landing, without any overt act evincing a purpose to execute it, is not, of itself, sufficient to warrant the interposition of the Court of Equity.    High on Injunction, § 425; *Gibson* v. *Smith*, 2 Atkins, 182.    The threatened injury differs widely from the tearing down of dwelling-houses or the cutting down of fruit trees or ornamental trees, for which it has been held that there could not be sufficient compensation in damages. High on Injunction, § 462.

For obvious reasons the defendant has the right to build a wharf or landing on his own water front, and cover it so as to protect fish or other articles landed there, and he will not be restrained in the exercise of this right because, in building at the deep water line, he may cut off the western approach to the plaintiff's house or close its western door. There is no error, and the judgment below is affirmed.

Affirmed.