JACOB WOOL v. WM. L. SAUNDERS, Secretary of State.

*Entries and Grants—Surveys—Warrants—Vacant Lands—Secretary of State—Code—Power of Court to Compel Issuance of Warrant—Conditions—Corporate Towns—Evidence—Navigable Water.*

1   The Secretary of State, upon application to him for a grant of vacant lands belonging to the State; has no right to receive and act upon testimony outside of the paper filed by the claimant.

2.  Where the claimant has complied with the law, and it appears from the warrant and survey that the entry taker and surveyor have discharged their duties, the Secretary must issue the grant, and has no discretion in the matter.

3.  The trial of questions arising thereon is left to the Courts.

4.  A grant irregularly issued is voidable; if issued for land not subject to entry, it is void.

5. The Secretary may refuse to issue a grant when, upon the face of the warrant and survey. it clearly appears that the land is not subject to entry, or is subject to entry only upon conditions which are not shown to exist; and no Court can compel him to issue such grant.

6. It appeared in a copy of the entry that the land entered " was covered by water in front of Jacob Wool's wood-yard wharf in the town of Edenton, running out from the foot of said wharf south between lines parallel and distant one from the other sixty-four and one-half feet so *far as the channel*, a distance of one hundred and forty-five feet, containing ____ acre" : *Held*, (1) that this decription shows that the land is covered by navigable water, and in front of an incorporated town ; (2) such land is not the subject of entry except under the provisions prescribed in *The Code* § 2751, one of which is that the town corporation shall regulate the line on deep water to which entries may be made ; (3) until the town authorities act the land is not subject to entry.

7. When it sufficiently appeared from the face of the papers presented by the claimant that the town authorities have designated the line on deep water to which the entry could be made, and that the boundaries indicated are in conformity therewith, the Secretary of State could issue the warrant.

The undersigned, parties to a question in difference which might be the subject of a civil action, agree upon the following statement of facts upon which the controversy depends, and submit the same to the Judge of the Superior Court of Wake County, which would have jurisdiction if an action had been brought :

1. The plaintiff is a citizen of North Carolina, residing in Chowan County, and the defendant is the Secretary of State of North Carolina.

2. That on the 17th day of April, 1890, the plaintiff filed in the office of the defendant, in the city of Raleigh, certain entries of land and certificates, plats, etc., copies of which are hereto attached, and upon them demanded of the defendant that he issue to plaintiff grants for the lands described in said entries, according to law.

3. That the defendant, on or about the 3d day of April, received from M. F. Bond and H. A. Bond, Jr., a certain communication, a copy whereof is hereto attached, and also copies of certain extracts from the proceedings of the Board of Councilmen of the town of Edenton, copies of which are hereto attached, and thereupon his note to plaintiff, a copy of which letter is hereto attached.

4. That the defendant refused, and still refuses, to issue to the plaintiff grants for the lands described in said entries.

Upon the foregoing statement of facts, the following question is submitted to the Court:

Is it the duty of the defendant to issue the grants demanded by the plaintiff?

If the Court shall be of opinion that it is the duty of the defendant to issue the grants demanded by the plaintiff, then judgment is to be entered in favor of the plaintiff, requiring the defendant to issue the said grants, and for the costs of the action.

If the Court shall be of opinion that it is not the duty of the defendant to issue the said grants, then judgment is to be entered in favor of the defendant, and against the plaintiff for costs.

*To the Entry Taker of Chowan County:*

The undersigned, Jacob Wool, a resident of Chowan County and a citizen of the State of North Carolina, makes an entry of the following described and unappropriated lands to such marks and lines on deep water and at the channel as may have been heretofore indicated by the Board of Councilmen of the town of Edenton: In front of said Wool's, John M. Jones' lot, bounded on the north by Blount Street, on the east by lot No. 187, south by creek and arm of Edenton Bay, and on the west by lot of D. W. Roper, containing ____ acre,

more or less, to-wit, the lands covered by water in front of the lands of said Wool above described, running south out from the said front of said Wool's lot to deep water at the channel in lines parallel and confined to straight lines, including only the said water-front, and the lands covered by water within the said lines to deep water at the channel.

This entry is made for the purpose of erecting a wharf, and other purposes incident thereto.

Witness his the said Jacob Wool's hand and seal, this 7th day of April, 1890.

his
JACOB + WOOL.   [Seal.]
mark.

Witness: WM. J. LEARY, JR.

REPORT OF SURVEYOR.

I, Patrick Matthews, a surveyor, appointed special surveyor on the 7th day of April, A. D., 1890, by the Board of Commissioners of Chowan County, to survey the lands covered by the entry of Jacob Wool, No. 38, entered on the 7th day of April, A. D. 1890, do hereby certify that in obedience to the warrant of survey, did, on the 10th day of April, 1890, after duly administering to the chain-carriers the following oath, to-wit: "That we, and each of us, do solemnly swear that we will measure justly and truly the lands which are about to be measured and deliver a true account of the same to the surveyor, the said Patrick Matthews, and otherwise to perform our duties as said chain-carriers according to law: so help us God," proceed to make the said survey of said lands and water-front covered by the entry No 38 of said Jacob Wool, and did, according to law, survey the said land and water-front so entered, two plats of which, showing the beginning, angles, etc., etc., are hereto attached, bounded and described as follows, to-wit, the land covered by water in front of Jacob Wool's lot on Blount street, in the town of

Edenton, county of Chowan, and State of North Carolina, bounded on the north by the said Blount street, east by the ice-house lot of H. A. Bond, south by creek, and on the west by the Page or D. W. Roper lot; beginning at "A" on the plat on the Roper line, thence with high-water mark to "B" in the line of the ice-house lot, thence south 17½ west 325 feet to point "C" in the plat, thence with the line of deep water to point "D" in the plat, thence north 17½ east 240 feet to the beginning, containing 74 yards.

In witness of which I, Patrick Matthews, Special Surveyor, have hereunto set my hand and seal, this 14th day of April, 1890.

PAT. MATTHEWS, .[Seal.]<br>
*Special Surveyor.*

*To the Entry Taker of Chowan County :*

The undersigned, Jacob Wool, a resident of Chowan County and a citizen of North Carolina, makes an entry of the following described vacant and unappropriated land, to-wit:

The land covered by water in front of Jacob Wool's wood-yard wharf in the town of Edenton, running out from the foot of said wharf south between lines parallel and distant one from the other sixty-four and one-half feet, so far as the channel, a distance of one hundred and forty-five feet, containing _____ acre.

This entry is made for the purpose of erecting a wharf, and other purposes incident thereto.

Witness his hand and seal, this 7th day of April, 1890.

his<br>
JACOB + WOOL. [Seal.]<br>
mark

Witness: WM. J. LEARY, JR.

### REPORT OF SURVEYOR.

I, Patrick Matthews, a surveyor, appointed on the 7th day of April, A. D., 1890, by the Board of Commissioners of Chowan County to survey the lands covered by the entry of Jacob Wool, No. 39, entered on the 7th day of April, A. D. 1890, after duly administering to the chain-carriers the following oath, to-wit, "That we, and each of us, do solemnly swear that we will measure justly and truly the lands which are about to be surveyed, and deliver a true account of the same to the surveyor, said Patrick Matthews, and otherwise to perform our duties as said chain-carriers according to law: so help us, God," proceeded to make the survey to said land and water-front covered by the entry (No. 39) of said Jacob Wool, and did, according to law, survey the said land and water-front so entered, two plats of which, showing the beginning, angles, etc., are hereto attached, bounded and described as follows, to-wit: The land covered by water in front of Jacob Wool's wood-yard lot, in the town of Edenton, county of Chowan and State of North Carolina, adjoining the lot of E. M. W. Moon, M. H. Dixon and others, beginning at point "A" on the plat; thence S. 74½ E. 64 feet, 3 inches, to point "B" on the plat; thence S. 8 W. 145 feet to "C"; thence N. 74½ W. 64 feet, 3 inches; thence N. 8 E. 145 feet to the beginning, containing 74 poles.

In witness whereof, I, Patrick Matthews, Special Surveyor as aforesaid, have hereunto set my hand and seal, this 14th day of April, A. D. 1890.

PAT. MATTHEWS, [Seal.]
*Special Surveyor.*

### JUDGMENT.

This controversy, submitted without action, coming on to be tried this 24th day of October, 1890, upon the statement of facts agreed, after consideration of the same, it is ordered

and adjudged that the defendant William L. Saunders, Secretary of State, cause to be duly issued to the plaintiff the grants for the real estate described in the pleadings, according to law, and that a writ of *mandamus* issue accordingly.

It is further adjudged that the plaintiff recover of the defendant the costs of this action, to be taxed by the Clerk.

*Mr. C. M. Busbee,* for plaintiff.

*Mr. Theo. F. Davidson, Attorney General,* for defendant.

SHEPHERD, J.: Two questions must be determined before we enter upon the consideration of the facts of this particular case.

1. Whether the Secretary of State has a right to receive and act upon testimony outside of the papers filed by a claimant for the purpose of obtaining a grant for vacant and unappropriated land belonging to the State?

We are of the opinion that the question must be answered in the negative. The law has carefully prescribed how vacant lands may be entered and in what cases the Secretary of State may issue grants. Chap. 17, vol. 2 of *The Code.* The entry takers and surveyors of the several counties are sworn officers charged with important duties in respect to the subject, and if it appears from the warrant and survey that they have discharged these duties, and if the claimant has in all other respects complied with the law, the Secretary has no discretion and must issue the grant. To permit or require the Secretary to go behind the *prima facie* right of the claimant and determine whether the land is subject to entry, would necessarily involve an inquiry into the legal or equitable rights of other parties claiming under prior entries or grants, or by adverse possession, and thus a new tribunal, unknown to the Constitution and laws, would be erected for the investigation of titles to real estate, the prac-

tical workings of which would be productive of inestimable conflict, uncertainty and confusion.

The trial of such questions is wisely left to the Courts after the grant is issued, the grant being voidable if irregularly issued, and void if the land is not subject to entry. *Strother* v. *Cathey*, 1 Murphy, 102; *Harshaw* v. *Taylor*, 3 Jones, 514; *State* v. *Bevers*, 86 N. C., 591; *Brem* v. *Houck*, 101 N. C., 627.

2. The second question is, whether the Secretary of State may refuse to issue a grant when upon the face of the claimant's papers (that is, the warrant and survey) it clearly appears that the land is not subject to entry, or subject to entry only upon certain conditions which are not shown to exist.

The power of the Secretary as to issuing grants is a limited one, and extends only to those lands which by statute are subject to entry. When, therefore, he issues a grant of lands which are not subject to entry, the grant is void in a Court of law because he has exceeded the authority delegated to him, and his act has no more validity than that of any private citizen. *Strother* v. *Cathey*, *supra*.

This being so, it would seem exceedingly plain that no Court ought to compel him to perform such an unauthorized act where the want of authority appears upon the face of the claimant's papers.

3. The application of these principles to the case before us is free from difficulty.

Excluding from our view, for the foregoing reasons, the communication of Mr. Bond and its accompanying exhibits, and looking only at the papers of the claimant, we find, upon an examination of entry No. 39, that the land described is covered by navigable water and in front of an incorporated town. Such land is not the subject of entry except under the conditions prescribed in *The Code*, § 2751 (subsection 1), one of which is that " the town corporation shall

regulate the line on deep water *to which entries may be made.*"
It seems to be conceded (and we think very properly) that
until the town authorities have acted, the land is not the
subject of entry. The language of the statute clearly implies
this, and there are obvious reasons why it should be so. If,
as suggested, the town authorities refuse to act, the Courts
may compel them to discharge their duty in this respect,
and in no event can our construction result in one party's
getting an undue priority over the other by any possible col-
lusion with the town authorities, since only one person (the
owner of the adjacent land) has a right to make such an entry.

It affirmatively appearing, then, that the land is covered
by water in front of an incorporated town, and such land
not being subject to entry until the town authorities have
acted, and this not being shown, we are of the opinion that
the Secretary of State had a right to decline issuing a grant
for the same.

As to entry No. 38, we think it sufficiently appears from
the face of the papers presented by the claimant that the
town authorities had designated the line on deep water to
which the entry could be made, and that the boundaries
indicated are in conformity therewith. We conclude, there-
fore, that as to this entry a grant should be issued by the
Secretary.

It has been suggested that, although upon the face of the
papers the claimant has a right to have a grant issued, and
although the Secretary cannot consider the communication
of Mr. Bond and its exhibits, still, the Court being possessed
of this information, we should not require the defendant to
do a vain thing. To this it may be answered that the Court
cannot act upon such information, as it may be incorrect or
susceptible of explanation, and the claimant ought not to
be precluded in this "short-hand" way of asserting his
alleged rights in "a due and orderly course of procedure."

The judgment must be modified to conform to this opinion.

108—47

AVERY, J.—dissenting: I do not concur in the opinion of the Court. I do not think that the Secretary of State " *had a right to decline issuing* " either of the grants applied for by the plaintiff. On the contrary, he is a mere ministerial officer, acting under the positive mandate of the law that he " *shall* make out grants *for all surveys returned to his office, which grants shall be authenticated by the Governor, countersigned by the Secretary and recorded in his office.*" *The Code,* § 2779. The same section provides further, that " no grant shall issue upon any survey *unless the same be signed by the surveyor of the county.*" The requirement that he shall make out and deliver the patent upon every warrant and survey authenticated by the Governor is mandatory. The implication arising out of this command of the law (subject to but a single limitation) is, that the certificate of the surveyor (and nothing short of that) is to be considered by the Secretary as ample evidence, not only of the number of acres embraced within the boundaries, but of the proper and lawful location of the land. A surveyor is required to give bond conditioned for the faithful discharge of his duties, and when he has been inducted into office the law presumes that he has a knowledge of the art of surveying. Lawson on Pre. Ev., p. 57; *Ashe* v. *Lonham,* 5 Ind , 434. Our statute recognizes this principle by thus requiring the Secretary to issue grants in all cases where the survey bears upon its face his certificate that he made it in accordance with the law.

I concur with the majority of the Court in the opinion that the Secretary of State cannot assume judicial functions and hear evidence *dehors* the warrant and survey as to the conflicting contentions of claimants. But it seems to me to be equally without warrant of law to constitute the Secretary of State a judicial officer, clothed with the power to pronounce an entry void upon its face for failure to comply with the law. I find the peremptory requirement that the grant shall issue to the claimant when he presents certain papers,

but the most minute search and critical examination of chapter 17, and of our statutes generally, does not lead to the discovery of any clause or section under which, explicitly or by implication of the law, the judicial power to pass upon the sufficiency of an entry is given to any officer or tribunal other than Courts erected for the purpose of passing upon such issues of law as well as the facts. The Constitution (Art. 4, § 2) declares that "the judicial power of the State shall be vested in a Court for the trial of impeachments, a Supreme Court, Superior Courts, and such other courts, inferior to the Supreme Court, as may be established by law."

If we concede the soundness of the abstract proposition that when the Secretary refuses to issue a grant upon an entry void upon its face the Courts will not use the writ of *mandamus* to do a vain thing by requiring him to issue it, I seriously doubt whether, since the enactment by the Provincial Legislature of 1777 of the first laws authorizing the conveyance of public lands by patent in the name of the State, a single entry or warrant has ever been forwarded to the Secretary which, upon its face, appeared to cover land not subject to entry. The judicial annals of the State for over one hundred years show no instance where the Secretary of State has refused to issue for any such reason, and no entry upon its face appearing to cover land that could not by law be conveyed by grant. The ruling of the Court in this case is an innovation certainly upon the established practice, and, in my opinion, is such a departure from an important principle as will lead to confusion and give rise to unnecessary litigation. A vague entry was declared not to be void against the State, nor against a subsequent purchaser with notice, because the location is made certain by the survey, and because it was and is deemed public policy to have our vacant lands appropriated by our people and made a source of income to the owners as well as the State. *Harris* v. *Ewing*, 1 Dev. & Bat. Eq., 374; *Bryson* v. *Dobson*, 3 Ired. Eq., 138.

Where persons have chosen to enter and obtain grants for land not subject by law to entry the Secretary has been accustomed to act without question upon the certificate of the surveyor, leaving the Courts to determine what interest passed by the conveyance as against the State or against other persons claiming under the State through other patents. The persistent efforts of owners of large bodies of land to establish some tribunal empowered to pass upon the validity of entries, have proven unavailing because of the popular opposition to imposing any restrictions that might postpone the making out of grants. The Code Commissioners reported a provision, which was enacted as a part of section 2765 of *The Code*, for allowing interested parties to show cause why a warrant of survey should not issue, but, at the very next session of the General Assembly, an amendment was passed striking out that provision and inserting in lieu the words *"the entry taker shall issue and deliver to the surveyor or enterer a proper warrant of survey, in which shall be copied such entry with its true number and date."* The same unequivocal language is applied to the issue of the warrant by the entry taker as that used in reference to the issue of the grant. If the Secretary of State has "the right" to refuse to issue the patent because, according to his own view of the law, the entry as incorporated in the warrant appears *prima facie* to cover land they cannot pass by grant, what is to prevent the entry taker from constituting himself a Court with jurisdiction of the single question whether the entry is not upon its face void because it covers land that, under a proper construction of some statute, is not subject to grant? We will search in vain for any legal warrant for vesting one of these officers with a discretionary right to disobey a positive mandate of the law because he is a high official of the executive department of the State, while the lower official is denied the right to disregard a similar requirement for the same reason. If we arbitrarily establish the right of both

to disregard the peremptory requirement of the law, then we will erect two petty tribunals, not heretofore known to our law, for construing all statutes authorizing the entering and granting of lands.

It seems to me manifest that the Secretary of State is a ministerial officer, bound to obey the law and issue grants upon all surveys signed by the surveyor of the county (or deputy when he is authorized by the law to act for him), and that he has no right to pass upon the question whether the entry is void upon its face. If we concede, however, that, whatever may be the extent of his power, the Courts are not required to compel him to issue a void grant, I maintain that there is nothing upon the face of the entry numbered 39, that would *justify this Court in pronouncing it void.* The statute (§ 2765 of *The Code*) as amended, provides, that "the claimant of land shall produce to the entry taker a *writing signed by such claimant, setting forth where the land is situated,* the nearest water-courses, mountains and remarkable places and such water-courses and remarkable places as may be therein, the natural boundaries and lines of any other person, if any, which divide it from other lands, and every such writing shall be on one quarter sheet of paper at least, and endorsed by the entry taker with the name of the claimant, the number of acres claimed, the date of the entry, and a copy thereof shall be entered in a book well bound and ruled with a large margin in spaces of equal distance; each space to contain one entry and every entry to be made in the order of time in which it shall be received and numbered in the margin." This is all of the statutory provision as to the form of entries, and its requirements are declared to be largely directory, it being deemed sufficient if the survey contain a specific description though the entry may be a "floating one;" not upon its face definitely located. *Harris* v. *Ewing, supra; Currie* v. *Gobson,* 4 Jones' Eq., 25; *Munroe* v. *McCormack,* 6 Ired. Eq., 85. The effect of the ruling in this

case is to super-add a proviso, not only that it shall appear affirmatively when land covered by water is entered in front of an incorporated town that the authorities have marked out the line of navigable water, as the statute prescribes, but that this new requirement shall be considered mandatory, so that without previous compliance on the part of the corporation the entry shall be declared void, and even a specific survey shall not be sufficient to make it effective as the basis of a grant from the State.

The material portion of the entry declared void in this case is the following description :

" The land covered by water in part of Jacob Wool's wood-yard wharf in the town of Edenton, running out from the foot of said wharf south between lines parallel and distant one from the other sixty-four and one-half feet, *so far as the channel*, a distance of one hundred and forty-five feet, containing __ acres."

The entry which is declared by the Court to be upon its face valid is in the following form :

" Jacob Wool, a resident of Chowan County and a citizen of the State of North Carolina, makes an entry of the following described and unappropriated lands to such marks *and lines on deep water and at the channel as may have been heretofore indicated by the Board of Councilmen* of the town of Edenton, in front Jacob Wool's John M. Jones lot, bounded on the north by Blount street, on the east by lot No. 187, south by creek and arm of Edenton Bay, and on the west by lot of D. W. Roper, containing ____ acres, more or less, to-wit, lands covered by water in front of the land of the said Wool above described, running south from the front of said Wool to deep water at the channel, in lines parallel and confined to straight lines, including only the said water-front and the land covered by water within the said lines to deep water on the channel. This entry is made for the purpose of erecting a wharf, and other purposes incident thereto."

*The Code*, § 2751, provides generally that all unappropriated lands belonging to the State shall be subject to entry, but excepts land covered by navigable water, with swamp lands and land covered by the waters of lakes. The exception to the first exception is that littoral and riparian owners may, for the purpose of erecting wharves, enter the land in which they before had a qualified property by the common law as far as the deep water (which, of course, means the margin of the navigable water). *Bond* v. *Wool*, 107 N. C., 139. When such entries are made in front of a town, the corporate authorities are required to "regulate the line on deep water to which entries may be made."

It will be conceded that if Jacob Wool's wood-yard was located on Edenton Bay, beyond the limits of an incorporated town, he would have the right to a grant for the land covered by the water in his front as far as the channel or margin of the navigable water, and an entry calling for the channel or for navigable water would be valid, the surveyor being of necessity at liberty to locate the line of the channel. There is nothing in entry No. 39, except the expression, "in front of Jacob Wool's wood-yard in the town of Edenton," to indicate that the land lies in front of an incorporated town. As the Secretary cannot look beyond the particular entry in passing upon its validity (according to the view taken by the Court), I respectfully insist that neither the Secretary of State nor this Court has the right to draw the inference from the fact that Edenton is called a town in the entry that it is an incorporated town, when the act incorporating it is not in evidence. *Town of Durham* v. *N. C. Railroad* (decided at this term). The law recognizes the fact that a town or city may exist with known limits and streets admitted to be highways, but without corporate existence. *Merriwether* v. *Garrett*, 10 Meyers' Fed. Dec., Corp., § 2224. The opinion of the Court rests upon the idea that not only is the marking of the line by the authorities of the town or city a condition precedent

to the acquisition of the right by the riparian proprietor to convert his qualified ownership into an absolute property, but that even where such line has been marked, and, in the absence of any prescribed statutory form except the general one, declared by this Court to be merely directory, the entry must be pronounced void because it does not affirmatively appear that the corporation has taken action.    I do not think that either proposition is supported by reason or authority; but, were we to concede that any grant issued to the applicant would be void unless the corporation had previously fixed its outer limit, even in this extreme view of the case I contend that the presumption of law would be that the officials named had discharged the duty required of them and in the proper manner, this being one of the many cases in which "acts of executive officers of the government (*c. g.*, Sheriffs, Registers, Treasurers, Surveyors) are presumed to be regular, so far as to throw the burden of proof on the party collaterally assailing such act on the ground of irregularity." 2 Wharton Ev., §§ 1318, 1297; Best on Ev., § 300; *United States* v. *Ross*, 92 U. S., 284.   Entry No. 39 extended as far as the "channel," that word being used to designate the nearest portion of the bay where vessels could pass.   The term "deep water" is used in the statute to denote precisely the same thing.   I think that the presumption of law is that the lines mentioned in entry No. 39 extended only to the channel or deep-water mark, *as that had been indicated by the officers authorized to mark such lines.*

But I further maintain that it is not *essential to the validity of a grant* to a riparian proprietor of his own water-front that the corporation should *fix the line of the channel before the entry is made.*   It has been decided by this Court, and settled by the leading Courts of the country, that littoral and riparian owners have, as an incident to their ownership of adjacent land, a qualified property in that covered by water on their front extending to navigable water (or to the channel or

deep water). *Bond* v. *Wool,* 107 N. C., 150. "It does not seem that the General Assembly intended, if it had the power to do so, to wrest (by *The Code,* § 2751) from the riparian proprietors any rights that they already held, but simply to allow them at a fair price to acquire an absolute instead of a qualified property." *Ibid.,* 154. This Court has held that the plaintiff had the right to erect a wharf at the channel on the margin of navigable water in his own front, and that he is not bound to await the action of a corporation in whose limits his land lies before building it though he erects it subject to the risk of losing it if located outside of the high-water mark subsequently made by the corporate authorities. When a person had erected a wharf before the passage of the Act of 1854 (*The Code,* § 2751), the Legislature, in that statute, recognized his qualified property and right to erect it "under the restrictions and the terms" prescribed in that act, viz., provided it should fall inside the deep-water line in front of any town, when established in the manner indicated by the laws. *The Code,* § 2751. Even the entry (No. 38) declared to be valid in this case, calls for "such marks and *lines on deep water, and at the channel, as may have been heretofore indicated,*" etc., not that have been designated, and it is not positively asserted, either in the entry or the survey, that such line has been established, though the high-water mark and the line of deep water are called for. But the law recognizes the existence of a line of deep navigable water to which the qualified property of the riparian owner extended before the Act of 1854 was passed, and if it should affirmatively appear that the line has been marked, it must be essential to state it more explicitly than it is stated either in entry No. 38 or in the survey of it. If we are permitted to infer from the language used in No. 38 that the line has been actually marked, and is the deep-water line called for in the survey, I can see no sufficient reason why the channel called for in No. 39 should not be presumed to have been indicated by the proper officials of the town.

The opinion of the Court rests upon the ground that it appears affirmatively, from the language of entry No. 39, that the land entered is covered by navigable water, and that "such land is not the subject of entry, except under conditions prescribed in *The Code,* § 2751 (1), one of which is "that the town corporation shall regulate the line on deep water to which entries may be made." When the Colony of North Carolina joined the other colonies in declaring its independence, all vacant lands were held to rest *ipso facto* in the sovereign State instead of in the British King, or the single Lord Proprietor, who claimed a portion of it under a grant from the Crown. The Act of 1777 first gave to the citizen the right of making entries upon certain conditions. One of these conditions was that the lands entered must not cover any portion of the territory set apart to the Cherokee Indians. Yet, when grants were made for land along the line of the Cherokee Nation, it was never thought necessary to set forth in an entry that it was located east of said line. Where entries were made and grants were issued after the line was established, by treaty, still further to the west, it was held by this Court repeatedly, that an entry and grant located on the Indian boundary line and covering land part'y within and partly outside of the prohibited territory were only void as to the portion within the Cherokee boundaries. *Brown* v. *Brown,* 106 N. C., 451. I do not see the obvious reason why when a riparian proprietor, in attempting to acquire the absolute property in land covered by water in his front co-extensive with his qualified property, mistakes the line of the channel as subsequently marked out by the proper officers, he should not be treated in the same way as one who, by mistake, has located his entry and grant so as to extend beyond the Meigs and Freeman line, or beyond the boundary of the county in which the entry was recorded. It is difficult to understand how the rights of any individual would be imperiled, if only so much of the land granted as

should lie inside of the line ultimately marked by the town authorities should pass by the grant.   It is certain that the State has no ground of complaint if the result of this mistake be to place in her coffers for the benefit of the public schools the purchase-money for so much of the land covered by water as extends beyond the established high-water mark, just as he acquires no title for so much of the land embraced in his grant as laps upon the older grant.   It seems to me, therefore, that the rule laid down by this Court in this case is arbitrary, not in harmony with previous adjudications construing analagous provisions of statutes in relation to entries and grants, and is not supported by reason.

*Per Curiam.*                              Modified and affirmed.