## WEIS *v.* MEYER.

Decided October 17, 1891.

1. *Easement appurtenant—Extinguishment.*

The owners of land fronting on the Mississippi river and known as the Ringo place conveyed a portion of it, distant a quarter of a mile from the river, by a deed which described the lot conveyed as part of the Ringo place and recited that it was conveyed "together with the free use of the river front." The lot was purchased to obtain the privilege of using the river front. Subsequently the lot and the intervening land were washed away by the river's encroachment. *Held,* That the easement acquired by the grantee in the river front was appurtenant to the lot, and not to the Ringo place, and was extinguished by the destruction of the lot.

2. *Estoppel—Former judgment.*

A judgment in a suit between the parties establishing the existence of the easement in favor of the grantee prior to the destruction of the lot will not estop the grantor from pleading its subsequent extinguishment.

APPEAL from *Chicot* Circuit Court in chancery.

CARROLL D. WOOD, Judge.

Ferdinand and Louis Weis brought suit against Carrie and Adolph Meyer to restrain them from interfering with their right to use certain land fronting upon the Mississippi river for receiving and forwarding freights. On final hearing a temporary injunction previously granted plaintiffs was dissolved, and plaintiffs appealed. The facts are stated in the opinion.

*C. H. Carlton* and *D. H. Reynolds* for appellants.

1. The landing privilege was in no way connected with the enjoyment or use of the lot, for the lot was not used. Simply *two things* were embraced in the deed, but neither was dependent on the other. 9 Wall., 243.

· 2. The appellants' right to the easement was established by previous litigation, approving and confirming the award, and in *Weis* v. *Meyer*, decided by this court.

*U. M. & G. B. Rose* and *James F. Robinson* for appellees.

The privilege was appurtenant to the lot. It was so con-

sidered by the parties, and their acts show it.   51 Ark., 75 ; 46 *id.*, 131.   The conveyance is of the lot *"together with"* the privilege, thus making the two inseparable. Wash., Ease., sec. 29 ; Big., Estop., 717 ; 4 McCord, 96 ; 17 Am. Dec., 710 ; 3 N. H., 190 ; 14 Am. Dec., 346 ; 17 Mass., 443 ; 4 Watts, 223.

2.   The privilege being appurtenant was lost by the destruction of the land upon which it depended.   3 Kent, Com., 449 ; Civil Code, La., art. 779, 783 ; Angell, Watercourses, sec. 247 ; 46 Mich., 575 ; 4 McCord, 96 ; 17 Am. Dec., 710 ; 41 Me., 37 ; 123 Mass., 567 ; 51 Ark., 237 ; 19 Ark., 23 ; 26 *id.*, 464 ; Goddard on Easements, pp., 321, 341 ; 55 Penn. St., 362 ; 4 H. & N., 8.

3.   The question here was not involved or settled in the previous award or decree.

COCKRILL, C. J.   The appellants claim the right to the use of the river front on the appellees' land for shipping purposes, and this appeal is prosecuted to establish it.

The right of the parties turn, in the first instance, upon the construction of the deed of the original owners of the land to Isaac Hilliard, through whom the appellants claim.   The deed is a conveyance of a lot in the unincorporated village of Grand Lake, which is described as a part of the Ringo place of which the grantors were owners.   It is in common form, except that after the granting clause this language follows, viz., " together with the free use of the river front for forwarding and receiving privileges."   The lot was at least a fourth of a mile from the Mississippi river when the deed was executed, and the grantors owned the land lying between it and the river.   The intervening land and the lot have since been washed away by the gradual encroachment of the river, and the boat landing is now in the rear of the former location of the lot, but still upon what is known as the Ringo place.

The appellants' claim is that they are entitled to the use of the river front, so long as it remains upon the Ringo place.

**1. Easement appurtenant extinguished when.** If the grant of the easement was to Isaac Hilliard, his heirs and assigns, having no connection with the lot except that the two were incidentally joined in one conveyance, it may be enjoyed by the appellants, notwithstanding the lot is now covered by the channel of the river, for the enjoyment of the easement would not then be dependent upon the ownership or existence of the lot. If, upon the other hand, the easement was intended by the parties to the Hilliard conveyance to be appurtenant to the lot, the appellants cannot now enjoy it, because, the dominant estate having washed away, the appurtenant easement has gone with it.

The grant was of the lot "together with" the easement. The common meaning of "together with" is "in company or union with, unitedly." The language employed might mean, however, that the conveyance of the lot and the grant of the easement are merely coincident in time. But if ambiguity arises from the double meaning of the term "together with," it will be resolved against the appellant when reference is had to the facts and circumstances surrounding the execution of the deed and the conduct of the parties under it. Where the meaning of the terms of a contract is doubtful, such circumstances may be referred to in order to elucidate it. *Watkins* v. *Greer, 52 Ark., 65.*

The facts in addition to those already stated may be epitomized as follows: The village of Grand Lake in which the lot was located had no river front. Several persons in the village appear to have been engaged in forwarding and receiving freight from landings on the river. Hilliard desired to enjoy that privilege on the front of the Ringo place, and offered to buy the lot for that purpose. The owners of the lot refused to sell it except in connection with the landing privilege, and for a sum in excess of the value of the lot. No separate consideration was specified for either, but both were sold upon one consideration. The lot was of but little value and was never used for any purpose by Hilliard or those claiming under him. It is stated in the appellants' abstract that the owner of the Ringo place sold and

leased several lots, one being leased to a Mrs Hollis prior
to the sale to Hilliard; that afterwards Cahn & Weis, the
latter being the appellant, leased a part of the lot from Mrs.
Hollis and carried on a business upon the river front there-
from.   This was apparently under a claim of a similar priv-
ilege appurtenant to that lot.   Meyer, who had become the
owner of the Ringo place, instituted suit to prevent them
from using the river front, whereupon they leased Hilliard's
lot, which adjoined it, for the purpose of getting the landing
privilege, and afterward Weis purchased it for that purpose.
E. S. Hilliard, brother of the grantee, testified that his
"brother bought the lot for the purpose of getting the priv-
ilege, and that he could not have gotten the privilege with-
out the lot."   There is nothing in the testimony which tends
to contradict this statement.

These circumstances justify the conclusion that the par-
ties to the Hilliard deed intended upon the one part to grant,
and upon the other to receive, the lot accompanied by and
united with the easement.   There is no legal obstacle in the
way of making an easement appurtenant to land where the
owner of the land manifests his intent to do so.   The deed
being construed in the light of the condition in which the
land was at the time of its execution, the reasonable mean-
ing is that the easement was intended only as a right to pass
over the grantor's other land, which lay between the lot con-
veyed and the river, for the purpose and with the right of
using the boat landing as a right appurtenant to the lot.
Neither the grantee nor his vendee can claim a like ease-
ment upon other lands because those upon which it was en-
joyed are now in the river.   The owner of the land cannot
be held responsible for the encroachment of the river.

It is contended, however, that the appellant's right to the
easement has been previously adjudged in his favor in a liti-
gation which binds the appellee, and that it is not now an
open question.   The contention is not sustained by the
record.   The suit between Meyer and Cahn & Weis, already
referred to, in which it is maintained that it was adjudged

2. **Estoppel by former judgment.**

that the appellants were entitled to the easement, was made, for aught that appears, before the river had reached the Hilliard lot, and therefore while the right to the easement existed. The record discloses nothing from which we can infer that the question now at issue was involved. The decree does not therefore settle this controversy.

The other decree relied upon was one for the specific performance of a contract made by Meyer to convey the Hilliard lot together with the easement, while the lot and the right to enjoy the easement existed; that is, before the lot had washed away. The court merely decreed specific performance; that is, in legal effect compelled Meyer to execute a quit-claim deed, conveying the Hilliard lot and easement in the language employed in the deed to Hilliard. No other question was involved. It amounts then to no more than if Meyer had executed the conveyances at the time he agreed to do so.

We find no error. Affirm.