ATLANTIC AND NORTH CAROLINA RAILROAD COMPANY
v. B. P. AND B. W. WAY.

(Filed 22 December, 1916.)

**1. Water and Water Courses—State Grants—Navigable Waters—Riparian Owner—Wharves—Statutes.**

The owner of lands adjoining navigable waters can only acquire a qualified right to, or easement in, the use of such waters and the soil covered thereby, under the provisions of Revisal, sec. 1696, restricted to the erection of wharves on the side of deep water in front of the shore, etc., and incidental to the ownership of the riparian lands, and not independently thereof.

**2. Same—Incidental to Ownership—Extinguishment—Reëntry.**

Where the riparian owner of shore lands upon navigable waters has entered upon the lands covered by the waters to deep water, and acquired the right to build a wharf, etc., under the provisions of Revisal, sec. 1696, and a strip of land along the shore line has been reclaimed and acquired by another, the original grant of easement by the State is extinguished, and the land so reclaimed becomes vacant and is again subject to entry under the provisions of the statute. See *s. c.*, 169 N. C., p. 1. The rights of riparian owners in land covered by navigable waters discussed by WALKER, J.

CIVIL ACTION tried before *Whedbee, J.,* and a jury, at March Term, 1916, of CARTERET.

The case was before this Court at Spring Term, 1915, and is reported in 169 N. C., at p. 1. We then granted a new trial. At the last trial the jury returned the following verdict:

1. Are Way Bros. the owners, in the actual occupation, and entitled to the possession of Lot No. 8 in said Block No. 7 in the plan of Morehead City? Answer: "Yes; by color of title more than seven years."

2. Was Lot No. 8 in said Block No. 7 filled up above high-water mark and thus reclaimed by Way Bros. and those under whom they claim prior to the filling in of the other lots, including 6 and 7, by the Government dredge? Answer: "Yes."

3. What amount and at what date did Way Bros. pay the city of Morehead on account of the construction of the bulkhead on the south side of Evans Street? Answer: "$1,000, on the 1st day of 1911."

4. What amount and at what date did the Atlantic and North Carolina Railroad Company pay the city of Morehead on account of the construction of the bulkhead on the south side of Evans Street? Answer: "$3,700, on 2 October, 1911."

5. For what length of time did Way Bros., and those under whom they claim, maintain and use a pier about 6 feet wide across Lots 6 and 7 to deep water in Bogue Sound? Answer: "Twenty years or more."

6. Is the land described in the entry which includes Lots 6 and 7 vacant and subject to entry and grant by the State? Answer: "Yes."

Judgment was entered for the defendant upon the verdict, and the plaintiff appealed.

*Moore & Dunn and J. F. Duncan for plaintiff.*
*Guion & Guion and E. H. Gorham for defendants.*

WALKER, J. The questions raised in this case are of great importance, but we think they have been decided by this Court in *Land Co. v. Hotel Co.,* 132 N. C., 517. When the case was here at a former term we gave expression to our views to some extent respecting the rights of the protestant under the grant to Morehead and Arendell, from which source its title was derived, and we virtually held, following what had been theretofore decided in *Land Co. v. Hotel Co., supra,* that the two grantees above named did not acquire the absolute and unrestricted right to title to the bed of the sound which was then covered by tidal waters, but only a qualified right, termed in the *Hotel Co. case* an easement, to use the waters in front of their shore land and the soil covered thereby for the specific purpose designated in the

statute (The Code, sec. 2751), since amended by Revisal, sec. 1696, and further amended by Public Laws 1893, ch. 17). Under Rev. Code, ch. 42, sec. 1 (now Revisal, sec. 1693), lands covered by navigable waters were not the subject of entry, but this was changed by Acts of 1854-5, ch. 21 (Revisal, sec. 1696), and, in this respect, the policy of the State has been changed, and entries of such lands are permitted, but to a limited extent, and not with the capacity of acquiring absolute title thereto in fee as in case of entries upon and grants issued for other or dry lands. It was thought by the Legislature that in the case of lands covered by navigable waters the interests of the State would be better subserved by extending the right of entry thereof to the riparian owners for the restricted purpose of using them for erecting wharves on the side of deep water in front of the shore in the manner provided in the statute (Revisal, sec. 1696), but the State evidently did not intend to part with all of its title, and granted merely a privilege or easement in the land and waters covered thereby, for the single purpose of building wharves in aid of commerce and a better enjoyment of the shores of navigable waters. When considering this feature of the enactment, under which the Morehead and Arendell grant was made, we said in our former opinion in this case: "The right to enter land covered by navigable water, even for the restricted uses and purposes, was, of course, an exception to the established policy of the State, which had existed for many years, and a statute like this, which is special in its nature, should not be carried in meaning beyond a strict construction of its language, and should be confined in its operation to the specified purposes. The right thus to enter land under navigable water was confined to riparian proprietors, the words being: 'Persons owning any lands on any navigable sound, river, creek, or arm of the sea' may so enter land, but for the purpose of erecting wharves on the side of the deep waters thereof, next to their lands, and the entry can extend only to 'deep water.' They are also confined to straight lines, and must not obstruct or impair navigation. It is true, the statute provides that they may thus enter the land covered by navigable water 'and obtain title as in other cases'; but this means no more than that a grant should issue for the land, and the expression does not carry with it the meaning that the title shall be the same as in other cases where grants are issued for patentable lands. This could not be so, as the statute expressly restricts the nature of the grant and defines the interest or estate thereby conveyed, and, as said in *Land Co. v. Hotel Co., supra,* the words of the grant must be considered as if the words of the statute, restricting the use of the land to the purpose of erecting wharves, had been written into it. One object of the grant was to afford foundations for wharves, and it conveyed an

easement to use the land for the purpose specified in the statute. It was so held in *Land Co. v. Hotel Co., supra;* and it was further held in that case that the easement was incidental to the ownership of the banks or shores of the body of water, whether river or sound, and was inseparable from the riparian proprietorship." *R. R. v. Way,* 169 N. C., 1.

The ownership of the shore and the right acquired by entry and grant under the statute (Revisal, sec. 1696) are inseparable, so that a conveyance of any part of the shore would carry with it the privilege or easement of using the navigable waters in front of it and the submerged soil for the specific purpose of building wharves along the line of deep water. This was the very ground and reason of the decision in *Land Co. v. Hotel Co., supra.* It was there contended by the plaintiff that under the Morehead and Arendell grant and mesne conveyances it had acquired a separate and independent title to the bed of the sound, and the tidal waters covering it, which lay immediately in front of the shore owned and occupied by the hotel company, and upon which bed of the sound the latter company had built a gangway or wharf and bathhouses and was then occupying and using the same. With respect to this contention in that case, the Court held: "We are of the opinion that the grant to Morehead and Arendell of Square 83 operated to give them an exclusive right or easement therein, as riparian owners and proprietors, to erect wharves, etc.; that when they ceased to be the owners of the land, by conveyance to the Shepherd's Point Land Company, such easement passed as appurtenant thereto, and that it has passed by the several conveyances of the land as appurtenant to Square No. 1; that such easement passed to the defendant company, and the plaintiff has no such title to the soil under the navigable water as entitled it to maintain this action."

The Court was then considering the question as to what rights passed to the grantee under the entry which had been laid and the grant which had issued thereon, under the authority given by the Acts of 1854, ch. 21 (Revisal, sec. 1696), and concluded, after a full and learned review of the authorities by *Justice Connor,* that there was no absolute and independent ownership of the bed of the sound conferred by the statute, but only an easement to use the same solely for the purpose indicated therein. The primary and even the exclusive intention of the statute was to grant submerged lands, and not dry lands, for the sole purpose of building wharves. Of course, the grantee had the implied power to do all such things and make such use of this land as would effectuate this purpose, but he was not to own the land unrestrictedly as in the case of other lands granted by the State which are not so submerged. If the right given by the statute, which is to be perfected

by an entry and grant, is only, in legal effect, an easement, we are unable to see why—when this easement could no longer be enjoyed, as the submerged land had become dry land—it was not altogether extinguished. The statute manifestly contemplated that, in order to the continuance of the easement, the land should remain submerged except so far as it was necessary that its condition should be changed for the enjoyment of the easement. In *Gregory v. Forbes,* 96 N. C., 77, *Chief Justice Smith,* for the Court, said that "A grant of lands covered by navigable waters can only issue 'for wharf purposes' "; and again, in the same case, that "The State can only issue a grant for land under navigable waters for the purpose of erecting a wharf, and then only to the riparian owner." As the place where the easement was located has been made dry land by filling in behind the wall or bulk-head, the object of the State in granting it, under the statute, has ceased to exist. "When the purpose, reason, and necessity for an easement cease, within the intent for which it was granted, the easement is extinguished. Hence, if an easement is not granted for all purposes, but for a particular use only, the right continues while the dominant tenement is used for that purpose, and ceases when the specified user ceases." 9 Ruling Case Law, sec. 71. An easement may be lost by a permanent change in the condition of the estate so as to render its enjoyment impossible, as in this case. Washburn in his work on Ease-ments (3 Ed.), p. 654, says: "It is stated, as a general proposition, that if an easement for a particular purpose is granted, when that purpose no longer exists there is an end of the easement"; and again, at p. 655: "Where there was a right of way from a piece of upland through a dock to deep water, and a street was laid out between such parcel and the deep water, and by its construction filled up the dock, cutting off com-munication between the upland and the water, it was held that the right of way was thereby extinguished," citing *Mussey v. Proprietors of Union Wharf,* 41 Me., 34. Where the change in the land or tenement is of such a decisive and conclusive a nature that the easement can no longer be enjoyed, it is extinguished, as where a piece of land subject to an easement is washed away by the encroachment of a river, the easement ceases, *Weis v. Meyer,* 17 S. W., 339; or where there is the grant of a right to grind at a mill, and the mill can no longer be used for the purpose of grinding, the right terminates. *Hahn v. Baker Lodge,* 21 Ore., 30. See, also, upon this subject, 14 Cyc., 1194. "An easement granted or reserved for a purpose definitely declared, ceases when this purpose no longer exists." Jones on Easements, sec. 843. In this case, plaintiff has consented to the erection of a structure which is incompatible with the continuance of the easement it acquired and which has so essentially changed the nature of the soil which was

the subject of the easement as to render nugatory the purpose for which the latter was originally granted. The land has been wholly diverted from that use and subjected to an inconsistent one.

In our former opinion it was said: "If the case should return to this Court, it may become necessary to decide more precisely what is the nature of the estate or interest which passed by the grant from the State; but this will depend largely upon the facts then before us, as it may prove to be immaterial upon those facts whether it is an easement merely or an estate upon condition subsequent—a determinable or base fee. What we have said concerning that interest is sufficient to dispose of this appeal, without any more definite expression of opinion in regard to it. It is sufficient, for the present, to say that the judge was in error when he took the other view of it."

We are constrained by the precedents in this Court to hold that plaintiff acquired only an easement in the bed of the sound in front of its shore lots. The identical construction was plainly given to the statute (Revisal, sec. 1696), in *Land Co. v. Hotel Co., supra,* and as it is a rule of property, if for no other reason, we must follow it. The point was directly raised in that case and decided, and the ruling governs this case. The same meaning was adopted in other cases decided by this Court and cited in the opinion in *Land Co. v. Hotel Co., supra,* and especially *Gregory v. Forbes, supra,* and *Holley v. Smith,* 130 N. C., 85. In the last cited case the present *Chief Justice* said: "The land here in question, as was admitted on the trial, is covered by the navigable waters of Chowan River, and, therefore, it was not subject to entry, except for wharves by the adjacent riparian owner in front of his own property, and even then subject to restriction." The question was not presented in *Bond v. Wool,* 107 N. C., 139, as no grant, under the statute, was ever issued to either of the parties to that section.

In the view taken by us of this case, it is unnecessary to consider the matters discussed in the brief or the other exceptions of the appellant, as our conclusion is that the State has granted only an easement in the bed of the sound, and as this has been changed to dry land by reclamation in the manner already described, the easement was destroyed, and the land, in its new form, belonged to the State, discharged of the easement, and, being vacant, was subject to entry. It results that there is no error in the judgment of the court.