RJR TECHNICAL COMPANY, AKA R.J.R. TECHNICAL COMPANY, A CORPORATION, PLAIN-
TIFF, STATE OF NORTH CAROLINA, EX REL, WILLIAM W. COBEY, JR., SECRETARY
OF THE DEPARTMENT OF ENVIRONMENT, HEALTH AND NATURAL RESOURCES, INTERVENOR-
PLAINTIFF V. TERRY PRATT AND EUGENE LEE, DEFENDANTS

WILLIAM CULLEN CAPEHART, PLAINTIFF, STATE OF NORTH CAROLINA, EX REL,
WILLIAM W. COBEY, JR., SECRETARY OF THE DEPARTMENT OF ENVIRONMENT, HEALTH
AND NATURAL RESOURCES, INTERVENOR-PLAINTIFF V. RJR TECHNICAL COMPANY, AKA,
R.J.R. TECHNICAL COMPANY, A CORPORATION, DEFENDANT

No. 104PA94

(Filed 10 February 1995)

Waters and Watercourses § 68 (NCI4th)— submerged land
beneath navigable waters of Albemarle Sound—exclusive
fishing rights—not conveyed

RJR did not own the exclusive fishing rights to two adjacent
tracts of submerged land lying beneath the navigable waters of
the Albemarle Sound where the lands were described in two
grants from the State in 1892. The words "exclusive" and "sever-
al" are absent from the statute under which the grant was made,
that statute contains no language whatsoever which expressly
authorizes the conveyance of exclusive fishing rights, and the
North Carolina Supreme Court has repeatedly held that exclusive
or "several" fisheries could not be obtained in the navigable
waters of the State. Although the Court of Appeals relied on
Shepard's Point Land Co. v. Atlantic Hotel, 132 N.C. 517, in hold-
ing that RJR held the exclusive right to fish these waters, that
case dealt with erecting wharves; there is a legally substantive
difference between an exclusive right of entry for the purpose of
erecting wharves and an exclusive right of entry for the purpose
of fishing.

Am Jur 2d, Waters §§ 378 et seq.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unani-
mous decision of the Court of Appeals, 113 N.C. App. 511, 439 S.E.2d
176 (1994), reversing in part and affirming in part a judgment entered
by Duke, J., on 21 July 1992 in Superior Court, Bertie County. Heard
in the Supreme Court on 11 January 1995.

*Mary E. Ward and Pritchett, Cooke & Burche, by W.L. Cooke, for plaintiff-appellee.*

*Michael F. Easley, Attorney General, by Daniel F. McLawhorn and J. Allen Jernigan, Special Deputy Attorneys General, and Amy R. Gillespie and David W. Berry, Associate Attorneys General, for intervenor-plaintiff-appellant.*

MITCHELL, Chief Justice.

This case involves conflicting claims between plaintiff, RJR Technical Company ("RJR"), and the State of North Carolina to two adjacent tracts of submerged land lying beneath the navigable waters of the Albemarle Sound. The parties agree that the lands in dispute are described in two grants from the State—the "Black Walnut Farm" water grant and the "Avoca Farm" water grant—to William R. Capehart issued on 12 December 1892, and that RJR has the record chain of title thereto. The property was granted "together with all Woods, Waters, Mines, Minerals, Hereditaments, and appurtenances to the said land belonging or appertaining: To Hold, to the said Wm. R. Capehart heirs and assigns, forever." The State's claim to the submerged lands in question is based on the "public trust doctrine."

The trial court held that RJR is the owner in fee simple of the submerged lands and that the grants from the State convey exclusive fishing rights. The Court of Appeals reversed the judgment of the trial court "to the extent [it] holds that RJR owns a fee simple interest in the submerged lands described in the grants." However, the Court of Appeals affirmed the judgment as to RJR's exclusive fishing rights. The questions presented on this appeal are: (1) whether Chapter 532 of the 1891 Session Laws, amending Section 2751 of the Code of North Carolina (1883) [hereinafter "the statute"], authorized the conveyance by the State of exclusive or "several" fishing rights in the navigable waters of the Albemarle Sound; (2) whether any exclusive fishing rights conveyed to RJR substantially impair the public trust; and (3) whether the grants at issue in this case violate Article I, Section 32 of the North Carolina Constitution prohibiting exclusive emoluments.

The State contends that the Court of Appeals erred when it held that Chapter 532 of the 1891 Session Laws authorized the conveyance of exclusive or "several" fishing rights in the navigable waters of the Albemarle Sound. Both parties agree that the properties in question are held in trust for the benefit of the public. In *State ex rel. Rohrer*

*v. Credle*, 322 N.C. 522, 369 S.E.2d 825 (1988), this Court determined that it has consistently been the law of this jurisdiction that lands and waters held by the sovereign in trust for the public cannot be conveyed by the State so as to deprive the public of its rights therein, except for legislatively authorized public purposes furthering the trust. *Id.* at 525-27, 369 S.E.2d at 827-28.

The statute provides:

All vacant and unappropriated lands, belonging to the state, shall be subject to entry by any citizen thereof, in the manner hereinafter provided, except:

(1) Lands covered by navigable waters: *Provided*, that persons owning lands on any navigable water for the purpose of erecting wharves or fish-houses or for fishing [in] said waters in front of their lands, may make entries of the land covered by said water, and obtain title as in other cases, but persons making such entries shall be confined to straight lines, including only the fronts of their own lands, and shall in no case extend a greater distance from the shore than one-fifth of the width of the stream, and shall in no respect obstruct or impair navigation . . . .

The Code of North Carolina § 2751(1), para. 1 (1883), *as amended by* 1891 N.C. Sess. Laws ch. 532, § 1. The statute was in effect on 7 June 1892 when William Capehart made the entries for the grants now asserted by RJR.[1]

The Court of Appeals concluded that by authorizing persons owning land on navigable waters to make entries of the lands covered by those waters "for fishing said waters," the General Assembly intended to authorize the grant of an exclusive appurtenant easement for fishing. "Statutory interpretation properly begins with an examination of the plain words of the statute." *Correl v. Division of Social Services*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992). Unless clear and specific words state otherwise, terms are to be construed so as to cause no interference with the public's dominant trust rights, for the presumption is that the sovereign did not intend to alienate such rights. *Atlantic and N.C. Railroad Co. v. Way*, 172 N.C. 774, 776-78, 90 S.E. 937, 938-40 (1916). We find it significant that the words "exclu-

---

1. In 1893, Chapter 532 was repealed by Chapter 4 of the Session Laws of 1893. Chapter 4 specifically provided, however, that it was to be in force "from and after its ratification" date of 2 January 1893.

sive" and "several" are absent from the statute. The statute contains no language whatsoever which expressly authorizes the conveyance of exclusive fishing rights.

This Court has repeatedly held that exclusive or "several" fisheries could not be obtained in the navigable waters of the State:

> A several fishery in the ocean or in a navigable stream is not, and never has been, the subject of private ownership in this State, because land covered by a navigable water course has always been expressly excluded from entry, and a grant of it by one individual to another would therefore exhibit on its face its own nullity.

*Gilliam v. Bird*, 30 N.C. 280, 284 (1848).

In *Bell v. Smith*, 171 N.C. 116, 87 S.E. 987 (1916), plaintiff argued that she held the exclusive right to a seine fishery adjacent to her beach in Bogue Sound by either grant of the bed or her habit of fishing the same area for many years. Chief Justice Walter Clark wrote: "The right to fish in navigable waters is open to all, and the proprietorship of the adjacent beach gives no exclusive right of fishing in the navigable waters in front thereof . . . ." *Id.* at 117, 87 S.E. at 988. Rejecting her claim of exclusive fishing rights by grant and prescription, the Court concluded:

> The right of fishing in the navigable waters of the State belongs to the people in common, to be exercised by them with due regard to the rights of each other, and cannot be reduced to exclusive or individual control either by grant or by long user by any one at a given point. Such right must be exercised, in the absence of express regulations by the State, with due regard to the rights of all under the general custom of fishing in the sound.

*Id.* at 118, 87 S.E. at 989.

The prohibition against granting exclusive fishing rights has not been modified in the years which followed. *See Capune v. Robbins*, 273 N.C. 581, 160 S.E.2d 881 (1968). In *Credle*, this Court recently reaffirmed that "no exclusive right to fish in navigable streams exists." 322 N.C. at 534, 369 S.E.2d at 832.

The Court of Appeals' decision does not comport with prior decisions of this Court to the effect that North Carolina law does not provide for private acquisition of exclusive or "several" fisheries in the State's navigable waters. Even though the Court of Appeals acknowledged this Court's prior holdings, it nonetheless concluded that RJR held the exclusive right to fish the waters in question. In so doing, the Court of Appeals relied on *Shepard's Point Land Co. v. Atlantic Hotel*, 132 N.C. 517, 44 S.E. 39 (1903).

In *Shepard's Point Land Co.*, this Court considered the nature of a grant issued by the State under the Session Laws of 1854-1855, Chapter 21, Section 2751. This statute provided that any person owning land on any navigable waters could make entries of the lands covered by such waters for the purpose of erecting wharves. The land in dispute was located beneath the navigable waters of Bogue Sound and adjacent to Morehead City. The plaintiffs argued that the grant conveyed the submerged land in fee simple. We concluded that "the grant . . . operated to give [plaintiffs] an exclusive right or easement therein as riparian owners and proprietors to erect wharves." *Id.* at 541, 44 S.E. at 47.

*Shepard's Point Land Co.* is distinguishable from and does not control the present case. There is a legally substantive difference between an exclusive right of entry for the purpose of erecting wharves and an exclusive right of entry for the purpose of fishing. In *Hampton v. Pulp Co.*, 223 N.C. 535, 541, 27 S.E.2d 538, 542 (1943), we concluded that "a riparian proprietor[] owns no part of the bed of the stream [the Roanoke River], and therefore has not a several and exclusive fishery, as that term is known to the law." *See also Capune v. Robbins*, 273 N.C. at 589, 160 S.E.2d at 886 (ocean pier owner does not control the right of fishing or navigation under or adjacent to the pier as a littoral right). Title to public trust waters is "held in trust for the people of the State, that they may enjoy the navigation of the waters, carry on commerce over them, *and have liberty of fishing therein*, freed from the obstruction or interference of private parties." *Shepard's Point Land Co.*, 132 N.C. at 526, 44 S.E. at 42 (emphasis added). A wharf is adjacent to the shore and projects only to a sufficient depth to permit watercraft to moor to it. The intrusion upon public trust property is minimal, and the public still has the liberty of fishing the waters under and along such wharf. In contrast, an exclusive or "several" fishery completely impairs the rights of the public in those waters. Therefore, we conclude that the Court of Appeals erred

by finding that the statute at issue here conveyed exclusive fishing rights by the mere words "for fishing said waters."

For the reasons stated herein, the decision of the Court of Appeals is reversed to the extent it holds that RJR owns an exclusive or several fishery. Because we answer the first question in the negative, we find it unnecessary to address the remaining questions.

Reversed in part.