### I. S. HENDERSON v. J. C. McLAIN.

(Filed 11 December, 1907).

1. **Evidence—Referee's Report—Findings—Appeal and Error—Conclusive.**

    When there is evidence upon which the findings of fact of the referee, affirmed by the Judge below, were made, the rulings of the Judge are conclusive on appeal.

2. **Courts — Newly Discovered Evidence — Discretion — Appeal and Error.**

    The refusal of the Judge below to set aside the report of the referee on the ground of newly discovered evidence is not reviewable in the Supreme Court.

3. **Evidence—Transactions with Dead Persons—Party in Interest—Competency.**

    The interest in the result of an action to disqualify a witness, under Revisal, sec. 1631 (The Code, sec. 590), must be legal and not merely sentimental. Therefore, the daughter of the plaintiff and granddaughter of the defendant's intestate is a competent witness to testify in behalf of her father in matters not concerning her own interest as distributee and heir at law of the estate of defendant's intestate, her grandmother.

4. Executors and Administrators—Living as a Member of Family—
   Board.

   The estate of the deceased grandmother is not chargeable with
   board, in the absence of contract, while she resided in the family
   of her deceased daughter as one of them, rendering such services
   as a grandmother would naturally render to her grandchildren.

5. Executors and Administrators—Living as a Member of Family—
   Helpless—Contract Implied.

   When the grandmother residing in the family of her deceased
   daughter as one of them became helpless, unable to render any
   service and altogether a charge, it is the policy of the law that
   she shall be provided for and properly taken charge of, and a
   promise to pay the necessary cost thereof is implied and is a
   proper charge against her estate.

CIVIL ACTION, heard by *Moore, J.,* at March Term, 1907,
of the Superior Court of IREDELL County.

Action for recovery for services rendered defendant's intes-
tate. The cause was referred, by consent, to Dorman Thomp-
son, Esq., as referee, who found as facts that, prior to 1886,
the defendant's intestate, Mrs. E. J. Wilson, was living with
her daughter, Mrs. J. F. McLain, in Mooresville, N. C. In
that year Mr. McLain failed in business and removed to the
mountains of North Carolina, and Mrs. Wilson moved, with
her trunk, bureau and personal property, to the home of her
son-in-law, the plaintiff, and resided there continuously till
her death, in January, 1905. Her daughter, the plaintiff's
wife, was then living, but in poor health, and died soon after,
leaving several small children. Mrs. Wilson continued to live
at the home of the plaintiff after the death of her daughter,
engaged, until the last eighteen months of her life, with such
care of the children "as a grandmother would in a house where
there were children." She sat in the room with the family
and ate at the table with them. She said: "They are kind
and good to me, and I want to help them all I can, and do as
much for them as I can, and help manage the children." At
the time Mrs. Wilson went to live in the home of the plaintiff

she was over sixty years of age, and she died at the age of eighty-two. For the last eighteen months prior to the death of the said Mrs. E. J. Wilson she was practically helpless, being confined to her chair; it was necessary to provide her with a rolling chair, and by reason of this her only means of locomotion was to have her chair rolled around the house by someone. She had to be helped from her chair to the bed; her feet and arms were much swollen, causing her much pain; and, by reason of her condition, it was necessary for the plaintiff or some member of his family, during a great part of this time, to sit up at night with her. The plaintiff slept in an adjoining room to that occupied by the defendant's intestate, with door open, so that "all she would have to do was to call him and she would have no trouble to get him up." During the time preceding the last eighteen months of her life the condition of the defendant's intestate was better than at any time during said eighteen months. During a part of said time she was in very good health, considering her advanced age in life.

For the last eighteen months prior to the death of the defendant's intestate the food, lodging, care and attention rendered her by the plaintiff and the members of his family were reasonably worth the sum of one dollar per day. For the time preceding the last eighteen months of the life of the defendant's intestate the board, lodging and care furnished and provided for her by the plaintiff and the members of his family were reasonably worth the sum of $10 per month.

The house in the town of Mooresville, North Carolina, in which the said I. S. Henderson resided with his family, and in which he was residing at the time of this hearing, was given to the wife of the said I. S. Henderson by Mrs. E. J. Wilson. The said Mrs. E. J. Wilson at the same time gave a house and lot in the town of Mooresville, North Carolina, to her daughter, Mrs. J. F. McLain, stating that she wanted

"both daughters to have an equal share." As to whether these gifts were made before or after the time that the said Mrs. E. J. Wilson went to live in the home of I. S. Henderson is not shown in the evidence.

At the time the said Mrs. E. J. Wilson went to live in the home of her son-in-law, I. S. Henderson, there was no express contract entered into between the plaintiff and the defendant's intestate under which the plaintiff was to be compensated for board, lodging and services rendered to the said Mrs. E. J. Wilson by the said I. S. Henderson and his family, nor was there ever at any time any such contract made and entered into with the plaintiff.

The defendant's intestate never paid the plaintiff anything during her life for board, lodging, care and attention, but on one occasion some corn and hay, which was worth $25, was turned over to plaintiff by Mrs. Wilson's tenant in 1903.

The plaintiff's counsel, upon the hearing, admitted that that part of the claim of the plaintiff for board, lodging, care and attention provided and furnished for the said Mrs. Wilson arising prior to 1 April, 1903, was barred by the statute of limitations, as contended in the answer of the defendant, and announced that such claim was waived by the plaintiff.

Upon the foregoing finding of facts by the referee the following were his conclusions of law:

That, upon the facts above found, the law implied a contract between the plaintiff and the defendant's intestate, by reason of which the plaintiff was entitled to charge the defendant, as administrator of Mrs. E. J. Wilson, the reasonable value of the board, lodging, care and attention furnished by said plaintiff to the defendant's intestate; that the plaintiff was entitled to charge the defendant, as administrator of Mrs. E. J. Wilson, the sum of $572, and such charge was allowed, subject to a credit of $25, the account being stated as follows:

HENDERSON *v.* McLAIN.

DEBITS.

To eighteen months' board, lodging, care and atten-
  tion, at $1 per day................................$547.00
To board, lodging, care, etc., from 1 April, 1903, to
  15 June, 1903, at $10 per month...............   25.00
                                                  _____
    Total.........................................$572.00

CREDITS.

Three loads of hay and 16 bushels of corn..........   25.00
                                                  _____
    Balance due....................................$547.00

The court overruled all exceptions to the referee's report
and rendered judgment for $547 and costs. The defendant
appealed.

*Armfield & Turner* for plaintiff.
*McLaughlin & Nicholson* and *Z. V. Turlington* for de-
fendant.

CLARK, C. J. The rulings of the Judge below upon the
exceptions to findings of fact are conclusive, there being evi-
dence upon such findings. *Dunavant v. Railroad,* 122 N. C.,
1001, and cases there cited.

The refusal of the Superior Court to set aside the report of
a referee on the ground of newly discovered evidence is not
reviewable. *Vest v. Cooper,* 68 N. C., 131; *Faison v. Wil-
liams,* 121 N. C., 153.

The exceptions to the overruling by the Judge of the excep-
tions of law present two main questions: First. The compe-
tency of the evidence of the daughter of the plaintiff and
granddaughter of the defendant's intestate, under Revisal, sec.
1631 (The Code, sec. 590). She is not interested, in a legal
sense, in the event of the verdict in behalf of her father, and
was competent as a witness for him. She was testifying

against (not in behalf of) her own interest, which, as heir at law and distributee of the estate of her grandmother, the defendant's intestate, was that it should not be diminished. *Bunn v. Todd,* 107 N. C., 266, where this section is analyzed. As was said in *Jones v. Emory,* 115 N. C., 158, "Unless the witness bear such a relation to the controversy that the verdict and judgment in the case may be used against him as a party in another action, he is not disqualified to testify." The interest in the result of an action to disqualify a witness must be legal and not merely sentimental. *Sutton v. Walters,* 118 N. C., 495. The same principle applies to the exception to the testimony of R. H. Neely, also a witness for plaintiff, who was guardian of plaintiff's other children, who are distributees and heirs at law of defendant's intestate.

The other point presented by several exceptions is as to the law applicable to the state of facts found by the referee and confirmed by the court. As it is found that there was no contract for compensation for board and lodging, but that Mrs. Wilson entered the family, became one of them, supervising the children in the place of her deceased daughter, and acting "as a grandmother would in a house where there were children," the law raises no implied contract that she should pay board. Indeed, it is impliedly negatived, as the relation existed for over twenty years, during all which time there was no agreement nor any payment. The $25 credited in 1903 seems to have been merely for some produce turned over by Mrs. Wilson's tenant to the plaintiff, for which he is accountable, but there is no evidence that it was paid in consideration of board. Most of the claim for board during the time Mrs. Wilson was acting in supervision of the children was conceded by plaintiff to be barred by the statute of limitations, which is pleaded, and the claim was disallowed by the referee, but he has erroneously allowed $25 for board from 1 April, 1903, to 15 June, 1903, which is not barred by the statute. This must be struck out of the account.

As to the board, lodging and attention during the last eighteen months of her life, during which time Mrs. Wilson was practically helpless and in the condition and requiring the attention found by the referee, there is nothing in the relation of the parties from which it can be justly inferred that such services and attention were to be rendered gratuitously where the party had an estate out of which the plaintiff could reasonably have expected compensation. As long as she was residing in the family as one of them, rendering such services as a grandmother would naturally render to the children of her deceased daughter, the implication, in the absence of contract, is that she was, *pro hac vice,* a member of the family, and that as her company and counsel were not to be charged for, neither was she chargeable with board.

But when she becomes helpless, unable to render any service, and altogether a charge, it is the policy of the law that she shall be provided for and properly taken care of, and for this reason the necessary cost thereof is properly a charge against her estate, if she have one. There is no presumption that such care was gratuitous, but there is an implied contract to pay for it. The burden of her last sickness should not fall upon her son-in-law, at whose house she happened to be, to the total exoneration of the other members of her family, who, as her heirs at law and next of kin, will share in her estate. This is a claim for expense incurred for benefit of the decedent, not for labor and services rendered by her, and hence the authorities cited, most of which are reviewed in *Winkler v. Killiam,* 141 N. C., 575, are not in point.

The $25 charged for board from 1 April to 15 June, 1903, will be struck out. The judgment will be thus

Modified and Affirmed.