ATLANTIC AND NORTH CAROLINA RAILROAD COMPANY
v. B. P. WAY AND B. W. WAY.

(Filed 22 April, 1915.)

**1. Courts—Intimation of Opinion—Instructions—Appeal and Error—Trials.**

When the trial judge intimates during the trial of a case that he will peremptorily instruct the jury to answer the controlling issue in favor of a party, upon the evidence, rendering it unavailing for the opposing party to further develop his case, he, in deference to the ruling of the court, may refrain from doing so, and appeal from the judgment accordingly rendered.

**2. State's Lands—Entry—Requisites—Navigable Waters—Interpretation of Statutes.**

Originally lands covered by navigable waters were not subject to entry, but by the act of 1854-5, ch. 21, this was changed, permitting entries to be made under certain restrictions, giving to incorporated towns the power to "regulate the line of deep water, to which entries may be made," when the riparian lands are situate therein. By Public Laws 1893, ch. 17, the words "to which entries may be made" were changed so as to read "to which wharves may be built." *Held*, the statutes are strictly construed with reference to the conditions under which entries may be made, and the entry does not confer an absolute and unrestricted title, but only an easement for the purposes specified in the statute, Revisal, sec. 1696, or, perhaps, an estate upon condition.

**3. Entries of Land Under Navigable Waters—Rights of Riparian Owners and Others Therein.**

Lands under navigable waters are not subject to entry except in the manner prescribed by the statute, and in strict conformity therewith, and then only by the riparian owner, not being subject to entry by those having no interest in the banks or shores.

1—169

R. R. *v.* WAY.

**4. State's Lands—Grants—Interpretation of Statutes.**

A grant of land covered by navigable waters, as permitted by statute, can have no further effect than the statute allows, and the grant will be construed as if the statute had been written into it. Revisal, sec. 1696.

**5. Courts — Intimation of Opinion — Instructions — Appeal and Error — New Trial—Scope of Inquiry—Evidence.**

In a proceeding to protest an entry under the provisions of Revisal, sec. 1696, the trial judge erroneously holding that the former entry of the protestant conferred an absolute and indefeasible title to lands under navigable water to the deep-water margin, and judgment having been accordingly rendered and appealed from by the enterer without full development of the case, the judgment will be set aside on appeal, leaving open to the parties to show, if they can do so, other matters affecting the title, which are relevant and available to them.

APPEAL by defendant from *Peebles, J.,* at October Term, 1914, of CARTERET.

Proceeding to protest Entry No. 4463 of a piece of land described as follows: "All that certain part of reclaimed land filled into the sea-wall of Morehead City, lying in the town of Morehead City east of Seventh Street and south of Arendell Street, beginning on Seventh Street at the southwest corner of Lot No. 8 in Square No. 7, and running thence south along what is called Seventh Street on the land of the town of Morehead City to deep-water or harbor line of Bogue Sound, thence east 100 feet, thence north parallel with Seventh Street to the southeast corner of said Lot No. 8 in Square No. 7, thence west along the line of said Lot No. 8 100 feet to the beginning, being the reclaimed land of the former water front of Lot No. 8 in Square No. 7 in the plan of the town of Morehead City, and the water front thereof to deep-water or harbor line."

The court submitted this issue to the jury: "Is the land described in the entry filed in this case vacant land and subject to entry thereof and grant from the State?" The entry of the defendants embraced Lots 6 and 7 in Square No. 7, as shown on the map of Morehead City. It was admitted that on 24 May, 1856, a grant was issued by the State to John M. Morehead and William H. Arendell for "the land lying around Shepherd's Point between high-water mark and the deep water of Bogue Sound, Newport River, and Calico Creek," which covered the land in dispute. This land, covered at that time by the waters of Bogue Sound, was conveyed by John M. Morehead and others, on 2 July, 1857, to the Shepherd's Point Land Company, and the enterer claims to have acquired title by mesne conveyances from that company to Lot No. 8, which lies in Square No. 7, between Lots 6 and 7 and Lots 9 and 10, the last two lots (9 and 10), which are now claimed by the protestant, being, at the time the deed of Morehead and others to the land company was executed, partly covered by the waters of said sound and partly dry

land. The tracks of the protestant are laid in Arendell Street, immediately back and north of Lots 9 and 10, with a sidewalk intervening. Arendell Street is one of the public streets of Morehead City, and protestant has its right of way thereon for its full width. Lots 9 and 10, and Lot 8, and Lots 6 and 7, in the order named, lie south of Arendell Street and the sidewalk, in the direction of Bogue Sound, and at the time of the grant to Morehead and Arendell, and the deed of Morehead and others to the land company, they were covered by its waters at high tide, except a small part of Lots Nos. 9 and 10 on their northern side. At low tide all of Lots 9 and 10, 8, and 6 and 7 were exposed, except a small part at the lower end of Lots 6 and 7. In 1902 Lot No. 8 was filled in with oyster shells, which caused an accretion of the land to form, and a fish and oyster house were built thereon. This was done by A. T. Lavalette, under whom the enterer claimed Lot No. 8, and who held a deed for said lot, and claimed under the land company, and a wharf was constructed from these buildings across Lots 6 and 7 and far enough out for boats to reach the wharf at low tide. Lot No. 8, after it was filled in as described, was above high-water mark with ordinary tides, but would be covered by "an extremely high tide." In 1913 a concrete sea-wall was built in front of these lots and of the town, and the space between it and high land was filled in with dirt and silt from dredgings made by the United States Government in Bogue Sound channel. The land is now above water and is dry land. This sea-wall, built for the purpose of filling in the space back of it to high land, "was paid for by Morehead City and individual owners of property." It is stated in the case that the protestant "bought some parts of Block 7 from the Shepherd Point Land Company and has been in possession of it for ten years, and that all property in Morehead City and adjacent thereto, not otherwise occupied, has been in the possession of the said land company for a great many years." It also appears that after the space between the sea-wall and high land had been filled in, a street was opened, presumably by the city, along and by the side of the wall, known as Evans Street, and Lots 6 and 7 now face on that street. There are 16 lots in Block 7. It is also stated that a grant was issued by the State for "all of this land," covering Lots 6 and 7, to the Shepherd Point Land Company in 1857. The waters of Bogue Sound are navigable.

The court held that, it having been admitted that the grant to Morehead and Arendell covered Lots 6 and 7, which defendant had entered, a second grant of the same land would be void, and the land was not, therefore, the subject of entry; and this being so, he would instruct the jury to answer the issue "No." The defendant, in deference to this ruling of the court, refrained from offering any further testimony or defense. The court then instructed the jury to answer the issue "No,"

if they believed the evidence, and defendant excepted. The jury answered the issue "No." Judgment was entered upon the verdict, and defendant appealed.

*Moore & Dunn and J. F. Duncan for plaintiff.*
*Guion & Guion and E. H. Gorham for defendant.*

WALKER, J., after stating the case: The instruction of the court, to which the enterer deferentially submitted and refrained from further developing his case, was erroneous. The deduction from this opinion of the court as to the effect of Grant No. 83 to Morehead and Arendell was necessarily that the protestant was entitled to recover, or to have his protest sustained. If the grant conferred an absolute and unrestricted title to the bed of the sound, the opinion was correct, but in the case of *Shepherd's Point Land Co. v. Atlantic Hotel Co.,* 132 N. C., 517, a construction was put upon this very grant, No. 83, to Morehead and Arendell, and it was held that it conveyed only an easement for the purposes specified in the statute, Code, sec. 2751, which has since been amended; Revisal, sec. 1696. Under Revisal, sec. 1693 (Rev. Code, ch. 42, sec. 1; Acts 1854-5, ch. 21), lands covered by navigable waters were not the subject of entry as other lands; but this was changed by Acts of 1854-5, ch. 21, so that entries were permitted under certain restrictions and only for the purposes indicated. The act provided as follows: "Persons owning lands on any navigable sound, river, creek, or arm of the sea, for the purpose of erecting wharves on the side of the deep waters thereof next to their lands, may make entries of the lands covered by water, adjacent to their own, as far as the deep water of such sound, river, creek, or arm of the sea, and obtain title as in other cases. But persons making such entries shall be confined to straight lines, including only the fronts of their own tracts, and shall in no respect obstruct or impair navigation. When any such entry shall be made in front of the lands in any incorporated town, the town corporation shall regulate the line on deep water, to which entries may be made." By Public Laws 1893, ch. 17, the words "to which entries may be made" were changed so as to read "to which wharves may be built." The right to enter land covered by navigable water, even for the restricted uses and purposes, was, of course, an exception to the established policy of the State, which had existed for many years, and a statute like this, which is special in its nature, should not be carried in meaning beyond a strict construction of its language, and should be confined in its operation to the specified purposes. The right thus to enter land under navigable water was confined to riparian proprietors, the words being: "Persons owning any lands on any navigable sound, river, creek, or arm of the sea" may so

enter land, but for the purpose of erecting wharves on the side of the deep waters thereof, next to their lands, and the entry can extend only to "deep water." They are also confined to straight lines and must not obstruct or impair navigation. It is true, the statute provides that they may thus enter the land covered by navigable water "and obtain title as in other cases," but this means no more than that a grant should issue for the land, and the expression does not carry with it the meaning that the title shall be the same as in other cases where grants are issued for patentable lands. This could not be so, as the statute expressly restricts the nature of the grant and defines the interest or estate thereby conveyed, and as said in *Land Co. v. Hotel Co., supra,* the words of the grant must be considered as if the words of the statute, restricting the use of the land to the purpose of erecting wharves, had been written into it. One object of the grant was to afford foundations for wharves, and it conveyed an easement to use the land for the purpose specified in the statute. It was so held in *Land Co. v. Hotel Co., supra;* and it was further held in that case that the easement was incidental to the ownership of the banks or shores of the body of water, whether river or sound, and was inseparable from the riparian proprietorship. The Court further says: "If the construction contended for by the plaintiff is correct, no purchaser of a town lot fronting on the waters could have erected a wharf, pier, or bath-house, or enjoyed many other privileges incident to his riparian ownership, without the consent of the owners of the navigable waters, and the Shepherd's Point Land Company could now levy tribute upon the commerce, business, and pleasure of the citizens of the town. The right of navigation would be of little value if a corporation, after selling the lots with water fronts, could prevent the building of wharves and enjoying other privileges. If this were the purpose and policy of the Legislature, why restrict the grant to the purpose of 'erecting wharves on the side of deep water thereof next to their lands'? and why restrict the privilege to 'persons owning land on any navigable waters'?" The plaintiff in that case claimed under this very grant, No. 83, which described the land covered by navigable water around Morehead City from high- to low-water mark, or from the shore to the deep-water line. It was held, as we will see, that having lost the ownership of the shore, the rights under the grant passed to the riparian owner, for the Court further said: "We are of the opinion that the grant to Morehead and Arendell of Square 83 operated to give them an exclusive right or easement therein as riparian owners and proprietors to erect wharves, etc.; that when they ceased to be the owners of the land, by conveyance to the Shepherd's Point Land Company, such easement passed as appurtenant thereto, and that it has passed by the several conveyances of the land as appurtenant to Square No. 1; that such easement passed to the

defendant company, and the plaintiff has no such title to the soil under the navigable water as entitles it to maintain this action." The Court cited *Gregory v. Forbes,* 96 N. C., 77, and quoted with approval the language of *Chief Justice Smith* as follows: "The survey, and we assume the entry, which it must follow, declare that it (the land) is for wharf purposes, and this is the only use for which the grant could issue." The case of *Florida v. Phosphate Co.,* 32 Fla., 82, was also cited, and this passage taken from it: "In construing this act, not only are we to keep in view the real nature of the subject-matter, but it is to be judged in the light of the rule applicable to all grants by the Government, which is that they are to be strictly construed or to be taken most beneficially ,in favor of the State and against the grantee. The plan of the act is that the title of the submerged land should be vested in the riparian owner for these uses and purposes. The State, *for the considerations above mentioned,* divests herself and invests the riparian owner with the title to the land." This Court thus commented upon the extract: *"These considerations* are for the purpose and end that commerce may be benefited by the building of wharves, piers, etc. And the grant in this case is one of the class in which the subject of the grant, as long as it is of that character to be used or built (upon) for the benefit of commerce, is apparent and controlling. The Court held that the right acquired was confined to the purposes set forth in the act." This Court also referred to several cases in which it was held that the use to which the land was to be applied controlled and restricted the estate granted, as in *Robinson v. R. R.,* 59 Vt., 426, where it was held that the grantee acquired only an easement when land was granted for a plank road, and *Flaten v. Morehead,* 51 Minn., 512, when land was conveyed "for use as a public park," where the Court said: "It is not incumbent upon us at this time to determine the precise nature of the estate conveyed by this instrument, whether a new easement was acquired by the village or an estate on condition or in trust. But. we are obliged to consider the clause in connection with the remainder of the deed and to give it the effect intended, if that can be discovered and is reconcilable with the main purpose of the parties."

If considered as an easement merely, as decided in *Land Co. v. Hotel Co.,* the interest conveyed by the grant is necessarily incident to the ownership of the shore. It was so held in *Zimmerman v. Robinson,* 114 N. C., 39, where the Court said: "Riparian rights being incident to land abutting on navigable waters, cannot be conveyed without a conveyance of such land, and such lands covered by navigable waters are subject to entry only by the owner of land abutting thereon." This being the conclusion of the Court in the *Land Co. case,* that only an easement passed, it follows that the judge was in error when he intimated

otherwise, and afterwards held that the land itself passed, so that a second grant therefor could not issue. If only an easement passed, the question arises, whether it has been lost or abandoned in any way, and as to what are the rights of the parties in the newly made or reclaimed land. We confess that the present state of the evidence is so uncertain, indefinite, and unintelligible that it would not be safe to pass upon the important matters involved without a full disclosure of the facts, and we might do great injustice to one or the other of the parties by undertaking now to decide them. It may appear more clearly and fully, at the next trial, what is the extent of protestant's right or easement in Arendell Street, and how and when acquired, and what is the status of the sidewalk with reference thereto. Is it included in the right of way or not? And also how and when protestant acquired title to Lots 9 and 10, if it is so owned, and how and when the enterer acquired title to Lot 8, if he has done so, and whether the protestant consented or contributed to the expense of building the wall and of filling in the space behind it with the dredgings from the channel of the sound. Has the enterer acquired title to Lot 8 by adverse possession, or in any other way; and, if so, did it extinguish the protestant's easement in the land formerly covered by water in front of Lots 9 and 10; or how are his rights affected thereby and by the building of the sea-wall and the conversion of that part of the bed of the sound into dry land? These are important questions, which should not be decided without a full knowledge of the facts and upon a mere consideration of the nature of Grant No. 83 to Morehead and Arendell.

As has been done before in like cases, we direct that the verdict and judgment be set aside, in order that the facts may be found, upon proper issues submitted to the jury, or otherwise, as the parties may agree, and that the case may be tried to a definite conclusion upon its real merits.

If the case should return to this Court, it may become necessary to decide more precisely what is the nature of the estate or interest which passed by the grant from the State, but this will depend largely upon the facts then before us, as it may prove to be immaterial upon those facts whether it is an easement merely or an estate upon condition subsequent—a determinable or base fee. What we have said concerning that interest is sufficient to dispose of this appeal, without any more definite expression of opinion in regard to it. It is sufficient, for the present, to say that the judge was in error when he took the other view of it.

New trial.