HELEN R. GAITHER AND HUSBAND, W. G. GAITHER, v. ALBEMARLE HOSPITAL, INC., AS TRUSTEE FOR PASQUOTANK COUNTY AND CITY OF ELIZABETH CITY, AND CITY OF ELIZABETH CITY AND PASQUOTANK COUNTY.

(Filed 30 April, 1952.)

**1. Reference § 4—**

Where defendants object to a compulsory reference ordered without first determining their plea in bar of title by adverse possession, but do not at once appeal therefrom, they may not, after reference, maintain that the plea in bar first should have been determined.

**2. Reference § 14a—**

Where defendants in a compulsory reference offer no evidence in support of their plea of title by adverse possession and tender no issue thereon with demand for jury trial, they waive the right to have the plea in bar tried by a jury.

**3. Appeal and Error § 40d—**

Findings of fact of the referee approved by the trial judge are conclusive on appeal when supported by any competent evidence.

**4. Dedication § 3: Waters and Watercourses § 12—**

Where the owner of lands sells same by lots with reference to a plat showing streets and roads, each grantee of a lot acquires an easement to use all of the streets and roads so shown, and this rule extends to the dedication of riparian rights along a navigable stream shown on the plat.

**5. Waters and Watercourses § 12—**

Navigable waters constitute a public highway which the public is entitled to use for travel either for business or pleasure, subject to the riparian owners' right of access and the right of private property in the banks of the stream.

**6. Same: Dedication § 3—**

The owner of lands along a navigable stream sold same with reference to a plat showing a street along the river with a strip of land never wider than six feet lying between the river and the street. *Held:* The purchasers of lots acquire the right to access to navigable water in front of the narrow strip of land, and are entitled to restrain another grantee from filling in the shallow water in front of his property so as to interfere with such right of access.

**7. Waters and Watercourses § 12—**

The filling in of land under shallow water along a navigable river in such a manner as to constitute a material obstruction to convenient, secure and expeditious navigation constitutes a nuisance notwithstanding that the obstruction may be a source of public benefit, and the creation of such nuisance may be restrained. G.S. 14-133.

**8. Appeal and Error § 39c—**

Where plaintiff is entitled to the relief sought upon his original complaint irrespective of allegations contained in his amended complaint, the order of the trial court allowing the filing of the amended complaint cannot be prejudicial even though the amendment be beyond the discretionary power of the court to allow.

BARNHILL, J., dissents on the question of dedication.

APPEAL by defendants from *Frizzelle, Judge* riding the First Judicial District Superior Court, 29 December, 1951, of PASQUOTANK.

Civil action to enjoin defendants, their agents, servants and employees, from building a break-water along, and constructing a public park out to, the deep water line of Pasquotank River in front, and to the east of plaintiffs' property fronting on Riverside Avenue in the city of Elizabeth City and Pasquotank County, North Carolina.

Plaintiffs allege in their complaint facts in respect of the deraignment of title by the respective parties, the physical situation, the announced purpose of defendants, and the effect of the proposed park on their property, substantially in accord with findings of fact made by the referee as hereinafter shown. They further allege in substance:

(1) That if defendants are permitted to carry out their purpose of constructing a park as indicated, plaintiffs will be deprived of their riparian rights, and the privilege of enjoying the use of the water of Pasquotank River adjacent to the land in question, and will suffer irreparable loss.

(2) That defendants have no title to the lands under the waters of Pasquotank River which would either justify or permit said break-water and fill, and defendants have no right to construct same, and the acts of defendants in that respect are wrongful and unlawful and constitute encroachments upon the rights and property of the plaintiffs.

(3) That the Riverside Land Company, having sold the lots now owned by plaintiff Helen R. Gaither, in reference to the plat, all those claiming under it, including defendants, are estopped from destroying or changing the said river in front of said lots, and plaintiffs expressly plead such estoppel.

Defendants, answering the complaint, admit that the street designated on the plat as "Riverside" has been opened to the general public since the map was placed of record; but they deny in material aspect other allegations.

"And for further and separate answer by way of defense," defendants aver:

"16. That, as defendants are advised, believe and therefore allege, the defendants herein and those under whom they claim have been in the open, notorious and adverse possession of the lands in controversy herein, under known and visible boundaries for more than seven years under color of title and for more than twenty-one years under color of title, for more than twenty years and for more than thirty years, and the said seven- and twenty-one-year and twenty- and thirty-year statutes of limitations are hereby pleaded in bar of plaintiffs' right to recover herein."

Plaintiffs at November Term, 1950, moved for a reference. The court finding as a fact that this action involves a complicated question of title and boundaries and that a reference is essential for a complete development of the facts and contentions of the parties, a reference was ordered, and Frank B. Aycock was appointed referee and directed to hear the evidence and contentions of the parties and to report to the court his findings of fact and conclusions of law. And this entry appears: "The defendants except to the foregoing order and reserve all rights to which they may be entitled, including the right to trial by jury if they so elect."

Pending the filing of report of referee, plaintiffs moved for permission to amend their complaint by adding at the end of section 12 the following:

"That plaintiffs are residents of Pasquotank County and are taxpayers of said County and of the City of Elizabeth City. That the construction of the proposed concrete breakwater and the construction of said park in said river will cost these plaintiffs and the other taxpayers of said County and City a large sum of money, and that such construction would in itself be a criminal act. Furthermore, if defendants are permitted to proceed with the construction of said breakwater and to fill the same in for a park, said area would immediately become public lands subject to entry which entry the defendants are, by statute, precluded from making, and the entire expenditure on the part of the defendants would be a total loss to be borne by the taxpayers of said County and City."

The referee, being of opinion that the proposed amendment to the complaint did not change substantially the claim or defense, that the same

evidence would support the amendment as would support the complaint in original form, that the same relief would apply to the original complaint and to the complaint as amended, that the testimony already taken in the case encompassed all purported facts necessary to support the allegations in the amended complaint, allowed the motion. Defendants except.

The referee made, and set out in his report, findings of fact substantially as follows:

1. That on or about 1 June, 1902, Riverside Land Company, a corporation, the then owner of certain lands situated on Pasquotank River in Pasquotank County, North Carolina, caused the lands to be surveyed and a plat made and recorded in the office of register of deeds of said county,—the land now being in the city limits of Elizabeth City.

2. That the corporation, Riverside Land Company, was dissolved in May, 1904.

3. That on this plat there was laid out a passageway designated as Riverside Avenue,—representing a street or avenue for the general use of the public, and extending from the western line of the property "eastwardly along the northern portion thereof, to a point within a few feet of the Pasquotank River and thence south 4 deg. west 475 feet and south 11 deg. east 105 feet to what is known as Hathaway property; that the street on the course south 4 deg. west was laid out as 50 feet in width and along the entire course ran within a few feet of Pasquotank River; that the plat as recorded indicates that at no point between Carolina Street and Preyer Street was there more than 6 feet between the high water mark of the river, and the eastern boundary of Riverside Avenue, and at most points there was less than 6 feet; and that Riverside Avenue between Carolina and Preyer Streets is an improved hard-surfaced road, 16 feet in width, in general use by the public.

"4. That said plat indicates numerous lots, laid off and numbered for purpose of sale to the public. That on the eastwardly course of Riverside Avenue there were numerous 50-foot lots, laid off and numbered, between said Riverside Avenue and the Pasquotank River. That some of the lots were of a depth between Riverside Avenue and Pasquotank River of as little as 9 to 18 feet. That, specifically, the lot designated as No. 161 had a depth on one side of 9 feet and on the other side of 12 feet; that Lot No. 162 had a depth on one side of 12 feet and on the other a depth of 15 feet; that Lot No. 163 had a depth on one side of 15 feet and on the other side 24 feet. That on the course of Riverside Avenue running south 4 deg. west where there was indicated a strip of land not more than six feet wide at any point no lots were laid off and numbered.

"5. That all parties to this action claim from a common source, to wit, the Riverside Land Company."

6. That Riverside Land Company, on given dates in the year 1903, conveyed lots Nos. 152, 153, 154, 155 and 156, which front on Riverside Avenue, between Carolina and Preyer Streets, and same have by successive conveyances come into the possession of plaintiffs who now own them; that between these lots and Pasquotank River there is the fifty-foot width of Riverside Avenue and "the aforementioned strip of land" between the eastern line or boundary of the avenue and the river, "not exceeding 6 feet at any point according to the plat"; "a level space reaching to a break in the river bank where the bank rapidly and irregularly falls off toward a narrow sand beach, which . . . then gently slopes to the water's edge in a comparatively regular manner"; that according to measurements made at five separate points between the east edge of these lots, Nos. 152-156, eastwardly to the break in the river bank the distances range from 33 feet to 60 feet; that according to measurements made at same time when the tide was 10 inches below high tide, and at the same points to the water's edge the distances ranged from 60 to 82 feet; that between the lots, where they abut the western line of Riverside Avenue, and the edge of the water at mean high tide, the distance is more than 50 feet; and that the tides in Pasquotank River are wind tides and are not influenced by the ocean tides.

7. That thereafter Riverside Land Company, by deed dated 9 May, 1904, and recorded in June, 1904, Book 27, page 504, conveyed to J. H. LeRoy lots numbered 161, 162, 169 and 75, as shown on the plat of 1 June, 1902, and immediately following the description of said lots, the deed contains the following:

"Also the lands under the water and right of entry for wharf purposes in front of said lots #169 and #161 and #162; and also the lands under the water and the right of entry for wharf purposes, beginning at West line of lot #162 on Pasquotank River; thence Easterly and Southerly, binding Riverside Avenue to Mrs. S. L. Hathaway's line; thence Easterly with her line projected to deep water line on Pasquotank River; thence binding the same Northerly and Westerly to opposite lot #162, thence to the beginning."

(With certain exception not now pertinent.)

And that J. H. LeRoy and wife, by paper writing dated 7 January, 1914, and registered, purported to convey to the Elizabeth City Hospital Company certain described property, substantially the same as in the above deed from Riverside Land Company to J. H. LeRoy, and "also his right, title and interest, in and to the land above described for wharf purposes as by Grant Number 76467 issued by the State of North Carolina to said J. H. LeRoy on the 13th day of February, 1905, and Grant Number 16497 issued to J. H. LeRoy by the State of North Carolina on

the 9th day of May 1905, which grants are duly recorded in the office of the Secretary of State," etc.

And that through connected chain, set out in detail, a paper writing, dated 1 October, 1938, and registered, from John Saliba, purported to convey to the Albemarle Hospital, Inc., "all that portion of said property lying south of the northern line of Carolina Avenue in said city of Elizabeth City, said line extending to deep water of Pasquotank River, said line being the division line between Carolina Avenue and said avenue extended and said hospital grounds proper, being so marked by privet hedge."

(It being found that the original conveyances by Riverside Land Company of lots Nos. 152-156 antedate the conveyance to J. H. LeRoy as set forth above.)

"8. That the Pasquotank River is a large watercourse upon which fairly large commercial vessels ply and such vessels plying said river may and do reach the ocean, various inland waters and the navigable waters of other States. That the Pasquotank River is a navigable stream. That the channel in said navigable stream is several hundred yards east of Riverside Avenue in front of lots Nos. 152-156. That immediately in front . . . between Preyer and Carolina Streets, the waters . . . are comparatively shallow . . . from the shore line to points 150 feet out in the river . . . That said shallow waters are capable of floating skiffs and small boats and small craft navigate the waters of the . . . river directly east of said lots from the shore line out.

"9. That the city of Elizabeth City and the County of Pasquotank, with the consent of the Albemarle Hospital, Inc., have expressed their intention to build a bulkhead or breakwater 150 feet from the shore line immediately to the east of Riverside Avenue and in front of lots Nos. 152-156. That the defendants have expressed their further intention to fill the space between the shore line and the bulkhead with debris and earth in order to convert the said area, now lying under the waters of Pasquotank River, into a public park. That such proposed park would be an obstruction in the waters of a navigable stream, but would not obstruct the channel of Pasquotank River.

"10. That the proposed action on the part of the defendants as set forth in the section next above will cause serious and irreparable damage to the plaintiffs in that the value of their lots Nos. 152-156 will be seriously diminished. That only a small portion of the damages that may be suffered by the plaintiffs would arise from the loss of accessibility to the waters from these lots. That such damages as may be suffered by the plaintiffs because of an impairment of the accessibility to the water would be greater in degree and different in kind from the damage suffered by the members of the general public. That the far greater portion of the

damages that may be suffered by these plaintiffs would arise from a dimi-
nution in aesthetic values now enjoyed by these plaintiffs by reason of
the proximity of said lots . . . to the waters of the . . . river.    That
this diminution in aesthetic value and consequent damage would not
arise from the threatened obstruction of navigation *per se* but would be
incident to and a by-product of such obstruction of navigation.

"11. That plaintiffs will suffer serious damage if the restraining order
prayed for is not issued.   That the defendants will suffer no damage if
such restraining order issues.

"12. That all the original conveyances by the Riverside Land Company
to the parties herein and/or their predecessors in title were by lot number
and reference to the aforementioned plat.   That said plat shows the
Pasquotank River as one of the geographical boundaries of the land of
the Riverside Land Company.   That all of the lots mentioned herein and
all the lots shown on the entire plat are shown on the plat as abutting the
near side of streets and avenues.

"13. That the plaintiffs are tax payers in the city of Elizabeth City
and County of Pasquotank.   That the plaintiffs have made no demand
upon the governing boards of the city of Elizabeth City and County of
Pasquotank that they desist from their plan as set forth in section 9,
but the defendants have alleged their intention to carry out the plan
unless restrained by order of court.

"14. That the construction of said bulkhead and fill for the purpose
of constructing said park will cost a considerable sum of money which
will be paid from monies raised by taxation in the city of Elizabeth City
and the County of Pasquotank."

Upon these findings of fact, the referee concluded as matters of law:

"1. That the plaintiffs were under no legal duty to make personal
protest to the governing bodies of the City of Elizabeth City and the
County of Pasquotank County before bringing this action.

"2. That Lots Nos. 152-156 abut and are bounded by the western edge
of Riverside Avenue.   That plaintiffs are not riparian owners and have
no riparian rights such as would entitle them to enter said lands for
wharf purposes, or claim title to lands formed by accretion.   That plain-
tiffs do have rights in Pasquotank River as a public thoroughfare and
a public way.

"3. That the paper writing dated May 9, 1904, recorded June 11, 1904,
in Book 27, page 504, did not convey the strip of land lying between
Riverside Avenue and Pasquotank River other than numbered lots and
specifically did not convey the strip of land between Riverside Avenue
and Pasquotank River between Carolina and Preyer Streets in front of
said Lots Nos. 152-156.   That said paper writing purporting to convey
lands under water conveyed no title to lands under water since it will be

presumed that the title to lands under navigable water is in the State in the absence of a showing of connected chain of title with a grant dated between 1835 A.D. and 1845 A.D.  That at the point in question in front of Lots Nos. 152-156, J. H. LeRoy did not obtain the right to enter for wharf purposes and his successors in title, the defendants, are not riparian owners and have no riparian rights in or along the Pasquotank River immediately in front of said Lots Nos. 152-156.

"4.  That by recording the plat in Book 26, at page 236, and indicating on said plat that there was only a narrow bank between Riverside Avenue and the waters of Pasquotank River, and by failing to indicate that said narrow strip of bank had been subdivided and by selling lots in said sub-division by plat and lot number, the Riverside Land Company dedicated such narrow strip or bank to the use of the public in reaching the waters of the Pasquotank River.

"5.  That such defendants as are parties to this action cannot be precluded and estopped on these facts from performing a useful public service and constructing a useful public work and the defendants are not estopped from the construction of the said park.

"6.  That the defendants have no legal right to enter into the lands under waters of Pasquotank River and obstruct the same.  That the construction of said park would constitute a public nuisance.  That if the defendants owned the aforementioned six-foot strip of land as shown by the plat, then the construction of said park would constitute a public nuisance.  That if the defendants owned said strip of bank and the lands under water in front of Lots Nos. 152-156, the construction of said park would constitute a public nuisance.  That the said proposed construction of the park should be enjoined as a nuisance.

"7.  That if and when the proposed park is constructed the lands in said park as artificially raised above the waters of the Pasquotank River will become vacant and unappropriated lands subject to entry by any citizen of this State.  That the defendants are not among the class that may make entry and obtain a grant to such lands.  That such construction would necessarily result in serious loss to the plaintiffs as taxpayers and such expenditure of the funds of the defendants with consequent loss should be enjoined."

The record shows that: "The defendants except to the report of the referee and for their exceptions say": Then follows exceptions to findings of fact, a portion of No. 9, and all of numbers 10, 11 and 14 for that, in substance, each is not supported by the evidence—but no issues were tendered.

Then there follows these exceptions to conclusions of law:

"1.  The defendants except to the Referee's Conclusion of Law No. 1 for the same is contrary to law, and the Referee should have concluded

that the plaintiffs were under legal duty to make protest to the governing bodies of the defendant County and the defendant City, in manner and form as required by law.

"2. Defendants except to so much of the second Conclusion of Law as reads as follows: 'The plaintiffs do have rights in Pasquotank River as a public thoroughfare and a public way,' for that such conclusion is contrary to law and the Referee should have concluded that plaintiffs have only such rights in the portion of Pasquotank River sought to be utilized as a park as is by law accorded to all other individuals, firms or corporations not owning riparian rights thereover.

"3. Defendants except to Conclusion of Law No. 3 for that such conclusion is contrary to law in its entirety, as the Referee should have concluded that the deed dated May 9, 1904, recorded in Book 27, page 504, in the Public Registry of Pasquotank County, conveyed from The Riverside Land Company to J. H. LeRoy all lands of the grantor lying to the east of Riverside Avenue between Carolina Avenue and Pryor Street, and that the Albemarle Hospital, Inc. is now the owner in fee of said lands, together with all riparian rights attendant thereto.

"4. The defendants except to Conclusion of Law No. 4 for that the same is contrary to law and is entirely unsupported by fact upon which such conclusion could properly be made.

"5. The defendants except to the 6th Conclusion of Law for that the same is contrary to law and is entirely unsupported by fact, and the Referee should have concluded that as against the plaintiffs the defendants had the right to construct the public park into the shoal waters of Pasquotank River in so far as the channel thereof was not obstructed; that said public park would not constitute a public nuisance and that if it did in fact constitute a public nuisance, that plaintiffs' remedy is not by injunction but by suit for damages.

"6. That defendants except to Conclusion of Law No. 7 for that the same is contrary to law and is entirely unsupported by fact or proper pleading.

"Exceptions to the Referee's Allowing the plaintiffs to File Additional Pleadings Following the Closing of the Testimony:

"The defendants except to the Referee's sustaining plaintiffs' motion to file additional pleadings as is set forth in the "Supplementary Transcript of Further Proceedings" for that the amendment to the complaint so allowed constituted a new and different cause of action."

On the other hand, the record shows that plaintiffs excepted to the fifth conclusion of law set forth in referee's report "for that there was no evidence or finding of fact to support same. On the contrary, the referee should have concluded on all the evidence and the findings of fact

that the defendants are estopped and precluded from construction of said purposed park, the Land Company having made the representations as shown by the plat, and the defendants claiming only such rights as they may have acquired under the LeRoy deed, all parties claiming from a common source."

When the cause came on for hearing on the exceptions filed by the respective parties, the judge entered judgment reading as follows:

"Counsel for plaintiffs and defendants having presented their contentions, and the court having carefully read and considered the pleadings, the evidence and the findings of fact and conclusions of law of the Referee, and the exceptions thereto: The court now finds the facts to be as set forth in the Referee's report and designated under 'Findings of Fact' as 'First,' 'Second,' 'Third,' 'Fourth,' 'Fifth,' 'Sixth,' 'Seventh,' 'Eighth,' 'Ninth,' 'Tenth,' 'Eleventh,' 'Twelfth' and 'Thirteenth,' and now confirms said findings by the Referee and adopts the same as the findings of this court as fully as if here copied verbatim.

"The court confirms and adopts as the conclusions of this court, the conclusions of law of the Referee as set forth under 'Conclusions of Law' and numbered 'First,' 'Second,' 'Third,' 'Fourth,' 'Sixth,' and 'Seventh,' but overrules conclusion of law number 'Fifth' and now holds as a matter of law that the defendants are estopped and precluded from construction of said proposed park.

"The exception of the plaintiffs is sustained, and the exceptions of the defendants are overruled.

"This court now confirms the 'Supplementary Transcript of Further Proceedings' of the Referee with respect to the amendment prayed for by plaintiffs, finds the facts to be as therein set forth and now confirms the Referee's Order allowing said amendment.

"It is, therefore, adjudged and decreed that the Findings of Fact by the Referee, and the Findings of Fact by this court, are amply supported by the evidence offered in this cause; that the defendants, their agents, servants and employees, be, and they are hereby enjoined and restrained from constructing said breakwater and from making the fill thereof adjacent to and immediately eastward of the street or driveway referred to as Riverside Drive and which street or driveway is immediately eastward of the lots of plaintiffs designated as lots Nos. 152 and 153 and 154 and 155 and 156 as shown on plat of Riverside Land Company, recorded in Book 26, page 236, in the office of the Register of Deeds of Pasquotank County; that the plaintiffs recover their costs to be taxed by the Clerk.

"Judgment is hereby entered accordingly.

"The Clerk will record the Referee's report with this judgment.

"By consent of plaintiffs and defendants, this judgment is signed out of term and out of the District with the same force and effect as if signed at term in Pasquotank County.

"December 29, 1951.

"J. PAUL FRIZZELLE,
Judge Riding First Judicial District."

The record shows appeal entries signed by the judge as follows: "To the judgment rendered by the undersigned judge on December 29, 1951, and received and filed by the clerk on January 2, 1952, the defendants in apt time except, and from same appeal to the Supreme Court . . ."

The record of agreed case on appeal shows, among other things, that there was evidence offered on the trial tending to support each and every finding of fact of the referee as is shown in his report.

The record of agreed case on appeal also shows that the defendants offered no evidence at the trial before the referee tending to support their plea of the statute of limitations.

The following also appears therein: "To each conclusion of law contained in said judgment and numbered below, and to each of them separately the defendants in apt time excepted as follows:" enumerating the conclusions of law and rulings as shown in the judgment—as well as to the signing and entering of the judgment.

And that from the judgment of the court below defendants appeal to Supreme Court, and they assign error.

*Worth & Horner for plaintiffs, appellees.*
*McMullan & Aydlett and Wilson & Wilson for defendants, appellants.*

WINBORNE, J. Appellants, the defendants, raise, and debate in their brief filed here on this appeal, four questions as arising upon assignments of error on which they rely. We hold, however, that on the record and case on appeal now considered, prejudicial error is not made to appear.

The first question presented is this: "Should the court have disposed of defendants' plea of adverse possession prior to entering an order of compulsory reference?" As to this, if it be conceded that the plea as made be sufficient to set up a good plea in bar to plaintiffs' cause of action, "the rule of practice in an orderly course of procedure" would be to have such defense disposed of before ordering a compulsory reference. *Comrs. v. Raleigh,* 88 N.C. 120, and numerous other cases.

Such plea raises an issue of fact which the pleaders are entitled to have tried by a jury. This right may be waived. In a consent reference this right is waived, and this issue, as well as all others raised by the pleadings, may be decided by the referee. On the other hand, in a compulsory

reference the right to have this issue tried by a jury is not waived, and this issue should be settled by a jury before an order of reference is made. (See McIntosh N. C. P. & P., Sec. 523.)

But if when a good plea in bar is pleaded the court should order a reference, a party may object, and "appeal at once, if he be so minded, or he may rely on his objection by reserving his exception, and appeal from the final judgment," *Walker, J.,* in *Pritchett v. Supply Co.,* 153 N.C. 344, 69 S.E. 249; *Baker v. Edwards,* 176 N.C. 229, 97 S.E. 16, and other cases.

Indeed, if the objectors elect to take the latter course, their right to have the issue based on the plea in bar tried by a jury, may be waived. *Booker v. Highlands,* 198 N.C. 282, 151 S.E. 635; *Brown v. Clement Co.,* 217 N.C. 47, 6 S.E. 2d 842, and cases cited.

In *Booker v. Highlands, supra, Stacy, C. J.,* states clearly and concisely the procedure which must be pursued in a compulsory reference in order to preserve the right to a trial by jury (the first two requirements being pertinent to case in hand), as follows:

"1. Object to the order of reference at the time it is made . . .

"2. On the coming in of the report of the reference, if it be adverse, file exceptions in apt time to particular findings of fact made by the referee, tender appropriate issues based on the facts pointed out in the exceptions and raised by the pleadings, and demand a jury trial on each of the issues thus tendered . . ."

And "a failure to observe any one of these requirements may constitute a waiver of the party's right to have the controverted matters submitted to a jury and authorize the judge to pass upon the exceptions without the aid of a jury." McIntosh, Sec. 525.

Applying this procedure to the case in hand, it appears that while defendants excepted to the order of reference, and filed exception to certain adverse findings of fact and conclusions of law made by the referee, yet they did not tender any issues, nor did they demand a jury trial on any issue. Hence, the right to have the issue raised by their plea in bar tried by a jury is waived. Indeed, they offered no evidence in support of such issue. And the rulings of the judge, made upon exceptions to the report of referee, while not expressly so stated, are tantamount to holding against defendants on their plea in bar.

The second question is stated by appellants in these words: "Does the recordation of the Riverside Land Company plat, showing a strip of land to the east of Riverside Avenue as undivided land, constitute a dedication of the strip for such a purpose as to give the plaintiffs a special property right therein sufficient to support their original complaint?"

In this connection, it is appropriate to note that, in this State, the findings of fact made by a referee, when there is evidence tending to

support them, if affirmed by the judge, are conclusive on appeal. See *Frey v. Lumber Co.,* 144 N.C. 759, 57 S.E. 464; *Henderson v. McLain,* 146 N.C. 329, 59 S.E. 873; *Mirror Co. v. Casualty Co.,* 153 N.C. 373, 69 S.E. 261.

And the question here posed by appellants is predicated upon assignments of error based upon exceptions to conclusions of law approved by the judge and to conclusions of law made by the judge. Hence the pivotal question is whether the findings of fact support these conclusions of law. The Court is of opinion, and holds that they do support such conclusions of law.

It is a settled principle in this State that when the owner of land, located within or without a city or town, has it subdivided and platted into lots, streets, alleys, and parks, and sells and conveys the lots or any of them with reference to the plat, nothing else appearing, he thereby dedicates the streets, alleys, and parks, and all of them, to the use of the purchasers, and those claiming under them, and of the public. See *Ins. Co. v. Carolina Beach,* 216 N.C. 778, 7 S.E. 2d 13, where pertinent decisions of this Court are assembled. Among the cases cited are: *Conrad v. Land Co.,* 126 N.C. 776, 36 S.E. 282; *Collins v. Land Co.,* 128 N.C. 563, 39 S.E. 21; *Hughes v. Clark,* 134 N.C. 457, 46 S.E. 956; *Green v. Miller,* 161 N.C. 24, 76 S.E. 505; *Sexton v. Elizabeth City,* 169 N.C. 385, 86 S.E. 344; *Wittson v. Dowling,* 179 N.C. 542, 103 S.E. 18. See also *Foster v. Atwater,* 226 N.C. 472, 38 S.E. 2d 316.

In the *Collins case, supra,* it is held "that a map or plat referred to in a deed, becomes a part of the deed as if it were written therein, and that, therefore, the plan indicated on the plat is to be regarded as a unity, and the purchaser of a lot acquires a right to have each and all of the ways and streets on the plat, or map, kept open." To support this view the Court quotes with approval the following from Elliott on Roads, Sec. 120: "It is not only those who buy lands or lots abutting on a road or street laid out on a map or plat that have a right to insist upon the opening of a road or street, but where streets and roads are marked on a plat and lots are bought and sold with reference to the map or plat, all who buy with reference to the general plan or scheme disclosed by the plat or map acquire a right to all the public ways designated thereon and may enforce the dedication. The plan or scheme indicated on the map or plat is regarded as a unity, and it is presumed, as well it may be, that all the public ways add value to all lots embraced in the general plan or scheme."

The reason for the rule, as stated in *Green v. Miller, supra,* is that "the grantor, by making such a conveyance of his property, induces the purchaser to believe that the streets and alleys, squares, courts and parks will be kept open for their use and benefit, and having acted upon the faith of his implied representations, based upon his conduct in platting the land

and selling accordingly, he is equitably estopped, as well in reference to the public as to his grantees, from denying the existence of the easement thus created."

In this connection attention is directed to Annotation appearing in 7 A.L.R. 2d 607, on the subject "Conveyance of lot by reference to map or plat as giving purchaser rights in indicated streets, alleys, and areas not abutting his lot." The annotator states that in those jurisdictions in which the question has arisen, the majority adhere to the "broad view" or "unity" rule, "that a grantee to whom a conveyance is made by reference to a map or plat acquires a private right, frequently designated as an easement to the use of all the streets and alleys delineated on such map or plat," as well as of a "park or other open area" delineated thereon. And the annotator classifies decisions of the Supreme Court of North Carolina as holding to the "broad view" or "unity" rule.

In this connection, it is noted that Pasquotank River is a navigable stream. And navigable waters constitute a public highway, which the public is entitled to use for the purposes of travel either for business or pleasure. *Cromartie v. Stone*, 194 N.C. 663, 140 S.E. 612. *S. ex rel. Lyon v. Power Co.*, 82 S.C. 181, 63 S.E. 884, 22 L.R.A. (N.S.) 435, 129 Am. St. Rep. 876, 17 Ann. Cas. 343, 56 Am. Jur. 672—Waters, Sec. 209.

However, the right of navigation gives no license to go and come through and over the riparian owner's land without "let or hindrance." Similarly, those navigating a river have no right, as incident to the right of navigation, to land upon and use the bank at a place other than a public landing without the consent of the owner, for the banks of a navigable stream are private property. 56 Am. Jur. 674—Waters, Sec. 213.

Moreover, in *Bond v. Wool*, 107 N.C. 139, 12 S.E. 281, this Court said: "In the absence of any special legislation on the subject, a littoral proprietor and a riparian owner, as is universally conceded, have a qualified property in the water frontage belonging, by nature, to their land, the chief advantage growing out of the appurtenant estate in the submerged land being the right of access over an extension of their water fronts to navigable water, and the right to construct wharves, piers, or landings, subject to such general rules and regulations as the Legislature, in the exercise of its powers, may prescribe for the public rights in rivers and navigable waters." See G.S. 146-6.

Again in the same case, at page 149, it is declared: "This qualified property, that, according to well settled principles, as interpreted in nearly all the highest courts of the United States, is necessarily incident to riparian ownership, extends to the submerged land bounded by the water front of a particular proprietor, the navigable water and two parallel lines projected from each side of his front to navigable water."

These principles were applied in *O'Neal v. Rollinson,* 212 N.C. 83, 192 S.E. 688. See also *R. R. v. Way,* 169 N.C. 1, 85 S.E. 12.

Hence, normally, the right of access to navigable waters over adjacent lands held under private ownership is vested exclusively in the owner of such lands, and can be exercised by another only by virtue of a grant or license by such owner. It is a property right, analogous, it is said, to an abutting owner's right of access to highways on land. 56 Am. Jur. 677, Waters, Sec. 216.

Applying these principles to the case in hand, the Riverside Land Company, being a riparian owner of land fronting on Pasquotank River, a navigable stream, shown on, and in accordance with, the plat by which it sold lots, had the right to grant to purchasers of such lots access over its water frontage land to the waters of the river. And the conclusions of law on the facts found appear logical.

The third and fourth questions as stated by appellants are these: (3) "Did the court err in allowing the plaintiffs to amend their complaint, and set up a taxpayer's action, after all the evidence had been taken and the case was under consideration by the referee?"

(4) "Does the construction of a park on the bluff, beach and shallow water east of Riverside Avenue constitute a public nuisance, and result in such an expenditure of funds for an unlawful purpose, the prevention of which the plaintiffs would be entitled to maintain a taxpayer's action?"

In this connection, the General Assembly has declared in G.S. 14-133 that "if any person shall erect artificial islands or lumps in any of the waters of the State east of the Atlantic Coast Line Railroad running from Wilmington to Weldon . . . to the North Carolina-Virginia state boundary, he shall be guilty of a misdemeanor." The Court will take judicial notice of the fact that the Pasquotank River is east of the above railroad as so expressly located.

Moreover, we find it stated in 56 Am. Jur. 680, Waters, 218, that, navigable waters being public highways, it follows, under elementary principles of the common law, that any unreasonable obstruction thereof, or of navigation thereon, is unlawful. In general, the rule is that all material obstructions to navigation not authorized by the proper governmental authority are public nuisances. See *Mfg. Co. v. R. R. Co.,* 117 N.C. 579, 23 S.E. 43; *Reyburn v. Sawyer,* 135 N.C. 328, 47 S.E. 761; *Pedrick v. R. & P. S. R. Co.,* 143 N.C. 485, 55 S.E. 877. Compare *Broocks v. Muirhead,* 223 N.C. 227, 25 S.E. 2d 889.

Indeed, it is stated that it is not necessary that obstructions in the way of navigation should have actually interfered with, or done it in order to render such obstructions nuisances; it is sufficient if navigation was thereby rendered less convenient, secure, and expeditious. The fact that

the obstruction may be a source of public benefit has been held not to relieve it of its character as a nuisance.

Hence, in the light of the decision here made in respect of the second question, as hereinabove stated, and of the principle last above stated, if there be error in allowing the amendment to which objection is made, it does not appear to be prejudicial to defendants, the appellants.

In conclusion, and after giving due consideration to argument advanced and authorities cited, the judgment from which appeal is taken is
    Affirmed.

BARNHILL, J., dissents on the question of dedication.